**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MARK E. HOLLIDAY, as Trustee of the LB
Litigation Trust,

                              Plaintiff,

        v.

BROWN RUDNICK LLP,

                              Defendant.

No. 1:19 Civ. 10925 (PAE) (SN)

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND ..............................................................................................................3

LEGAL STANDARD.........................................................................................................7

ARGUMENT ...................................................................................................................9

I.      THE REPLACEMENT TRUSTEE'S FIRST CLAIM FAILS BECAUSE HE
        HAS NOT ALLEGED GROUNDS FOR EITHER NEGLIGENCE OR
        CAUSATION. ...................................................................................................9

        A.      Brown Rudnick's Decision to Focus Primarily on LBI's Consolidated
                Insolvency Was Reasonable. ...................................................................9

                1.      Focusing on LBI Was a Viable Litigation Strategy....................................10

                2.      The Intercompany Note Was Not A Silver Bullet. ...................................13

        B.      The Replacement Trustee's Further Allegations Do Not Plead
                Malpractice. ......................................................................................15

                1.      The Replacement Trustee's Criticism of Brown Rudnick's
                        Summary Judgment Actions Is Misplaced And Legally Irrelevant..........15

                2.      Criticisms of an Expert's Analysis do not Establish Legal
                        Negligence. ..............................................................................16

        C.      The Replacement Trustee Fails to Allege that Brown Rudnick's Strategic
                Decisions Proximately Caused The Trust Injuries.................................19

II.     THE REPLACEMENT TRUSTEE'S SECOND CLAIM FAILS BECAUSE THE
        TRUST ADVISORY BOARD WAS NOT BROWN RUDNICK'S CLIENT. .................21

III.    THE REPLACEMENT TRUSTEE CANNOT SHOW BREACH OF A
        FIDUCIARY DUTY AND FAILS TO PLEAD CAUSATION AND DAMAGES .........22

CONCLUSION................................................................................................................24

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Achtman v. Kirby, McInerney & Squire, LLP,*
    464 F.3d 328 (2d Cir. 2006)...........................................................................7, 8, 9

*Allstate Fabricators Corp. v. Flagstaff Foodservice Corp. (In re Flagstaff*
    *Foodservices Corp.),*
    56 B.R. 899 (Bankr. S.D.N.Y. 1986)....................................................................10

*Am. Stevedoring, Inc. v. Red Hook Container Terminal, LLC,*
    134 A.D.3d 419 (1st Dep't 2015).........................................................................24

*In re AutoStyle Plastics, Inc.,*
    239 F.3d 726 (6th Cir. 2001)...............................................................................15

*Bernstein v. Oppenheim & Co.,*
    160 A.D.2d 428 (1st Dep't 1990).........................................................................12

*Bison Capital Corp. v. Hunton &Williams LLP,*
    2016 WL 4094717 (Sup. Ct. N.Y. County July 28, 2016)...........................9, 13, 16

*Brookwood Cos. v. Alston & Bird LLP,*
    146 A.D.3d 662 (1st Dep't Jan. 26, 2017)............................................................18

*Chinello v. Nixon, Hargrave, Devans & Doyle, LLP,*
    15 A.D.3d 894 (4th Dep't 2005)..........................................................................22

*Conway v. Conway,*
    2019 WL 1331624 (S.D.N.Y. Mar. 25, 2019).......................................................10

*Darby & Darby, P.C. v. VSI Int'l, Inc.,*
    95 N.Y.2d 308 (2000)...............................................................................3, 14, 15

*DiFolco v. MSNBC Cable LLC,*
    622 F.3d 104 (2d Cir. 2010)..................................................................................4

*Global Network Commc'ns, Inc. v. City of N.Y.,*
    458 F.3d 150 (2d Cir. 2006)..................................................................................3

*Gorbatov v. Tsirelman,*
    155 A.D.3d 836 (2d Dep't 2017)...........................................................................8

*Grosso v. Biaggi,*
    2013 WL 3743482 (S.D.N.Y. July 17, 2013)........................................................7

*Hatfield v. Herz*,
    109 F. Supp. 2d 174 (S.D.N.Y. 2000)..................................................................................13

*In re Jesup & Lamont, Inc.*,
    507 B.R 452 (Bankr. S.D.N.Y. 2014)..................................................................................18

*Joseph DelGreco & Co. v. DLA Piper L.L.P. (U.S.)*,
    899 F. Supp. 2d 268 (S.D.N.Y. 2012) (J. Engelmayer)....................................................1, 7

*Kassel v. Donohue*,
    127 A.D.3d 674 (1st Dep't 2015) ........................................................................................12

*Katz v. Essner*,
    136 A.D.3d 575 (1st Dep't 2016) ........................................................................................22

*Leder v. Spiegel*,
    9 N.Y.3d 836 (2007) ...........................................................................................................18

*Levitin v. Rosenthal*,
    903 F. Supp. 400 (E.D.N.Y. 1995) .......................................................................................8

*Lieblich v. Pruzan*,
    104 A.D.3d 462 (1st Dep't 2013) ..........................................................................................8

*Lindenman v. Kreitzer*,
    7 A.D.3d 30 (1st Dep't 2004) ...............................................................................................7

*In re Lyondell Chem. Co.*,
    567 B.R. ...............................................................................................................................11

*In re Lyondell Chem. Co.*,
    585 B.R. ...............................................................................................................................15

*Mason Tenders Dist. Council Pension Fund v. Messera*,
    4 F. Supp. 2d 293 (S.D.N.Y. 1998)......................................................................................22

*Moore v. Ackerman*,
    24 Misc. 3d 275 (Sup. Ct. Kings County 2009).....................................................................23

*Moreno-Godoy v. Gallet Dreyer & Berkey, LLP*,
    2015 WL 5737565 (S.D.N.Y. Sept. 30, 2015) (J. Engelmayer) .............................................7

*Matter of Newhoff's Will*,
    107 Misc. 2d 589 (Sup. Ct. Nassau County Dec. 18, 1980)..................................................22

*Nitis v. Goldenthal*,
    128 A.D.2d 687......................................................................................................................20

*Numatics, Inc. v. Balluff, Inc.*,
  66 F. Supp. 3d 934 (E.D. Mich. 2014) .................................................................19

*Prout v. Vladeck*,
  316 F. Supp. 3d 784 (S.D.N.Y. 2018) ..............................................................8, 24

*Romanian Am. Interests, Inc. v. Scher*,
  94 A.D.2d 549 (2d Dep't 1983) ...........................................................................20

*Rosner v. Paley*,
  65 N.Y.2d 736 (1985) ................................................................................2, 8, 10

*Rubenstein v. Int'l Value Advisers, LLC*,
  363 F. Supp. 3d 379 (S.D.N.Y. 2019) (J. Engelmayer) ..........................................4

*Sage Realty Corp. v. Proskauer Rose Goetz Mendelsohn LLP*,
  91 N.Y.2d 30 (1997) .......................................................................................8, 23

*Schutz v. Kagan Lubic Lepper Finkelstein & Gold, LLP*,
  2013 WL 3357921 (S.D.N.Y. July 2, 2013) (J. Engelmayer) ..................................8

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
  96 F. Supp. 3d 325 (S.D.N.Y. 2015) ....................................................................10

*Stevens & Lee, P.C. v. Levine*,
  2011 WL 5118169 (Sup. Ct. N.Y County Aug. 9, 2011) .........................................8

*Sustainable Pte Ltd. v. Peak Venture Partners LLC*,
  2018 WL 4181718 (Sup. Ct. N.Y. County Aug. 31, 2018) ....................................23

*In re TOUSA, Inc.*,
  422 B.R. 783 (Bankr. S.D. Fla. 2009) ..................................................................10

*Warshaw Burstein Cohen Schlesinger & Kuh, LLP v. Longmire*,
  106 A.D.3d 536 (1st Dep't 2013) .........................................................................20

*Williams v. Havas*,
  1996 WL 626347 (2d Cir. Oct. 30, 1996) .............................................................12

## RULES

Fed. R. Civ. P. 26(a)(2)(B) ...........................................................................................19

## OTHER AUTHORITIES

Ronald E. Mallen, *Recognizing and Defining Legal Malpractice*, 30 S.C. L. Rev.
  203, 210 (1979) ....................................................................................................14

## PRELIMINARY STATEMENT

Over nearly a decade of zealous advocacy in bankruptcy litigation, Brown Rudnick recovered hundreds of millions of dollars for beneficiaries of the Trust.[1]  Unsatisfied with those results, Plaintiff Holliday (the "Replacement Trustee") now seeks to recover through a belated malpractice claim what the Trust did not win at trial.  But the FAC does not allege that Brown Rudnick missed filings or deadlines, failed to perfect rights, or gave advice at odds with binding authority – the limited categories of errors that this Court has recognized give rise to malpractice claims under New York law.  *See, e.g., Joseph DelGreco & Co. v. DLA Piper L.L.P. (U.S.)*, 899 F. Supp. 2d 268, 276 (S.D.N.Y. 2012) (J. Engelmayer).  Faced with the failings of his initial pleadings in Brown Rudnick's first motion to dismiss, the Replacement Trustee rushed to replead around those significant shortcomings.  But he fails to correct the most basic flaws: choosing one viable litigation strategy over another is not malpractice; and Brown Rudnick owed no fiduciary duties to a non-client.  Colorful language aside, the FAC is no more than a final attempt to escape the reality that all trials – no matter how well litigated by both sides – have winners and losers.

The Replacement Trustee attempts years after the fact to re-litigate one of Brown Rudnick's strategic choices when seeking to recover certain preference payments in bankruptcy – specifically, its decision to prioritize establishing LBI's consolidated insolvency at trial in order to establish the insolvency of LBI's subsidiary, Lyondell.  But for all of its bluster, the FAC tellingly does not contest that Brown Rudnick's chosen strategy was viable and offered various advantages over the alternative approach that the Replacement Trustee now prefers – trying to establish only Lyondell's standalone insolvency.  At bottom, therefore, his claim is that Brown Rudnick should

---

[1] Unless defined herein, capitalized terms have the meaning assigned to them in the First Amended Complaint ("FAC"), Dkt. No. 24, and "Ex. __" refers to exhibits attached to the Declaration of Christopher J. Clark filed contemporaneously herewith.

have made an alternative strategic call in a complicated case.  But as the New York Court of Appeals has made clear, even when a plaintiff identifies "other alternatives which might have been pursued by" counsel, "selection of one among several reasonable courses of action does not constitute malpractice" as a matter of law.  *Rosner v. Paley*, 65 N.Y.2d 736, 738 (1985).

The Replacement Trustee also argues that Brown Rudnick could have proven Lyondell's insolvency had Brown Rudnick only introduced a photocopy of an intercompany note.  Nonsense. Introducing a photocopy would have done nothing to establish LBI's consolidated insolvency, and would have been merely cumulative to the existing record evidence of the debt – a debt that in fact failed to persuade the Bankruptcy Court of Lyondell's standalone insolvency.

The Replacement Trustee also seeks to hold Brown Rudnick responsible for a litany of sins allegedly committed in litigating the Preference Claim, and for his dissatisfaction with the judgment of the Trust's expert.  But there is no basis under New York law to hold that a ***lawyer*** commits malpractice based on a qualified ***expert's*** substantive opinions and technical judgments.

Not only does the Replacement Trustee fail to plead the negligence essential to malpractice, he also fails to plead proximate causation.  The FAC alleges that a different strategy would have "easily" established Lyondell's standalone insolvency.  But baseless adverbs are not well-pled facts.  As noted, the FAC pleads no facts explaining how that strategy would have overcome the argument that Lyondell could not be insolvent if LBI were solvent.  Further, aside from conclusory statements, the FAC does even attempt to plead a path to victory over the heavily litigated affirmative defense that the payments at issue were ordinary-course and hence not recoverable.

The Replacement Trustee's second claim for malpractice – based on Brown Rudnick's alleged failure to keep the Trust Advisory Board apprised of the advisability of settlement as a result of Brown Rudnick's alleged negligence – must fail because it turns on his deficient first

malpractice claim.  But it also fails for an even more basic reason: there was no attorney-client relationship between Brown Rudnick and the Trust Advisory Board.  The only relevant attorney-client relationship was between Brown Rudnick and Edward S. Weisfelner as the original Trustee and the Trust.  Because Brown Rudnick owed no duty to the Trust Advisory Board, any failure to keep it apprised of developments is irrelevant to a claim for malpractice.

Finally, the Replacement Trustee's third claim, for breach of fiduciary duty, fails because he cannot be heard to complain that he did not receive a file for which he refused to pay.  Lawyers are entitled to payment of the costs associated with producing a client's file.  Moreover, the FAC does not even try to plead two elements of this claim: causation and damages.

In the end, the gravamen of the Replacement Trustee's claims is that – knowing the outcome of the underlying litigation – he would have made different strategic decisions to secure a different result.  Anyone who has lost at trial would consider different strategies with the "perfect vision and wisdom of hindsight."  *Darby & Darby, P.C. v. VSI Int'l, Inc.*, 95 N.Y.2d 308, 315 (2000) (internal quotation marks and citation omitted).  The law is clear that malpractice does not follow from a trial loss.  New York courts have repeatedly refused to entertain such claims, lest they open the floodgates to malpractice litigation by any disappointed party.  This Court should do the same. Having shown that it cannot overcome the deficiencies identified in the motion to dismiss the original complaint, the FAC should now be dismissed with prejudice.

## **BACKGROUND**[2]

In 2009, Brown Rudnick became counsel to the Official Committee of Unsecured Creditors (the "UCC"), the predecessor-in-interest to the Trust, in connection with the Lyondell and LBI

---

[2] The Court can take judicial notice of the record in the underlying case.  *See Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) (permitting judicial notice of such records).  Documents incorporated by reference into a complaint, such as the Engagement

bankruptcies that followed the December 2007 leveraged buyout of Lyondell by Basell B.V. (the "LBO").  *See* Ex. 3, Notice of Appearance by Brown Rudnick; Ex. 4, Order Confirming Third Amended Joint Chapter 11 Plan of Reorganization at 40-41; *see also* Ex. 5, Order and Opinion. LBI was the holding company of its subsidiary Lyondell and numerous related entities.  *See* Ex. 6, First Day Affidavit of A. Bigman ¶ 13.

In pre-confirmation litigation, Brown Rudnick secured approximately $450 million in value for general unsecured creditors.  *See* Ex. 4 (incorporating Lender Litigation Settlement).  In the confirmation of the plan of reorganization, the Trust was established to prosecute claims assigned to it, including by LBI and Lyondell.  *See id.* at 40-41.  Edward S. Weisfelner, a senior partner at Brown Rudnick, was appointed the original Trustee and retained Brown Rudnick to represent him in carrying out his mandate.[3]  On the eve of trial on the largest remaining claims, Brown Rudnick negotiated a significant settlement with Lyondell's former directors and officers; together with its successful prosecution of dozens of claims against third parties, Brown Rudnick recovered approximately $150 million in additional value for the Trust.  In all, Brown Rudnick recovered approximately $600 million for the unsecured creditors.  *See, e.g.,* Ex. 8, Order Approving Revised Settlement with Financing Party Defendants.

The adversary proceeding that gives rise to the FAC was one of many such proceedings on behalf of the Trust.  *See Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, Adv. Proc. No. 09-01375.  The initial complaint included twenty-one claims against Access Industries Holdings, LLC and related parties ("Access") and others.  *See* Ex. 9, Complaint; *see* also Ex. 10, Amended

---

Letter, *see* Ex. 2, FAC ¶ 21, may be considered on a motion to dismiss, *see Rubenstein v. Int'l Value Advisers, LLC*, 363 F. Supp. 3d 379, 383 n.2 (S.D.N.Y. 2019) (J. Engelmayer) (citing *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)).

[3]  *See* Ex. 7, February 26, 2020 Declaration of Joel S. Miliband, Ex. A, Terms of Engagement dated April 30, 2010 (the "Engagement Letter").

Complaint.  Among the claims that Brown Rudnick litigated through trial were: (1) a fraudulent transfer claim (the "Toehold Claim") related to the more than $500 million Access received from the LBO's leveraged financing, which Lyondell, LBI and their affiliates had to repay (Ex. 9 ¶¶ 281-287); and (2) an avoidable preference claim (the "Preference Claim") relating to transfers totaling $300 million to Access in October 2008 to repay within a matter of days Lyondell's draw on a line of credit from Access.  *Id.* ¶¶ 351-360.  The Toehold and the Preference Claims each required a finding of insolvency as of a specific date.  Brown Rudnick commissioned a report in support of each claim from insolvency expert Anders J. Maxwell of PJ Solomon.  *See* Ex. 11, Plaintiff's Pre-Trial Brief at 31 n.21.

In its motion for summary judgment on the Preference Claim, Brown Rudnick invoked the statutory presumption that Lyondell was insolvent, and also noted that the Trust's expert evidence showed LBI's consolidated insolvency.  *See* Ex. 12, Trustee's Memorandum of Law in Support of Summary Judgment at 15 n.65.  Although Access had presented no expert evidence on solvency during discovery, the Bankruptcy Judge denied the Trustee's motion for summary judgment based on rebuttal fact evidence Access submitted, requiring trial on the Preference Claim.  *See* Exs. 13, Access's Memorandum of Law in Opposition to Trustee's Motion for Summary Judgment at 11-20 and 14, Order Denying Cross-Motions for Summary Judgment at 5-6.

For trial, Brown Rudnick had to decide how much to focus on Lyondell's standalone insolvency and how much to focus on demonstrating LBI's consolidated insolvency.[4]  Brown

---

[4]   At summary judgment, Brown Rudnick attempted to establish insolvency by, among other things, invoking the statutory presumption that Lyondell was insolvent 90 days before it filed for bankruptcy.  Brown Rudnick argued, in addition, that evidence of LBI's consolidated insolvency supported the conclusion that Lyondell was then insolvent.  Nonetheless, the Bankruptcy Court found that the presumption that Lyondell was insolvent was rebutted in light of Access's factual arguments.  The Bankruptcy Court's finding at summary judgment that the presumption had been

Rudnick was cognizant that it was Lyondell that had made the relevant transfers and asserted the Preference Claim, but knew that the Access defendants would try to undercut any strategy that focused on Lyondell's standalone insolvency if it failed also to address complicated financial relationships with other LBI entities.  And indeed, Access argued at trial that Lyondell *could not* be insolvent *unless* the entire LBI group were found to be insolvent.  *See* Ex. 15, Feb. 2, 2017 Hr'g Tr. at 209:20-21 ("I don't think Lyondell can be insolvent if LBI isn't insolvent.").

In the end, Brown Rudnick first sought to use expert testimony to show LBI's consolidated insolvency; this would have sufficed to establish the Preference Claim's insolvency element. Second, and notwithstanding the risk that the Bankruptcy Court would reject it absent a showing of LBI's insolvency, it sought to show Lyondell's standalone insolvency through documentary evidence, including evidence of a multi-billion dollar intercompany debt (the "Intercompany Note") made as of the date of the LBO, which it emphasized in closing arguments and post-trial briefing.  *See* Ex. 15 at 37:4-10; *see also* Ex. 26, Trustee's Proposed Findings of Fact ¶ 881, Ex. 27, *Designation No. 964 – Lyondell 3Q 2008 10-Q* at 37.  This was a classic strategic decision of which evidence to emphasize when, as Brown Rudnick adjusted its approach in response to signals it received from the judge at trial.

Notwithstanding Brown Rudnick's best efforts, the Trust did not prevail on the Preference Claim in the Bankruptcy Court.  Rather than blame that outcome on Brown Rudnick at the time, the Trustee, advised by the same Trust Advisory Board that exists today, *retained* Brown Rudnick for the appeal.[5]  On appeal, the Trust argued, *inter alia*, that the trial evidence had overwhelmingly established both LBI's and Lyondell's insolvency.  *See* Ex. 16, Brief for Plaintiff-Appellant at 50.

---

rebutted only reinforced Brown Rudnick's ultimate determination that the clearest path to establishing insolvency at trial was prioritizing LBI's consolidated insolvency.

[5] The Trust also retained Kellogg, Hansen to work on the appeal.  *See* FAC ¶ 76.

Only years after both the trial and the appeal did the Replacement Trustee, advised by the same Trust Advisory Board, threaten claims against Brown Rudnick. On May 3, 2019, following an offer by a beneficiary of the Trust to purchase claims against Brown Rudnick and others for $5 million, *see* Ex. 7, Ex. B, the Trust Advisory Board removed Mr. Weisfelner as Trustee and appointed Mark E. Holliday as the Replacement Trustee, *see* Ex. 17, Notice of Removal and Appointment of Successor Trustee. New counsel for the Replacement Trustee demanded that Brown Rudnick produce the Trust's client file, but refused to reimburse Brown Rudnick for the actual cost of assembling the file. *See* Exs. 18-22 (correspondence dated May 15, 2019, May 17, 2019, June 26, 2019, July 23, 2019, and August 8, 2019).

## LEGAL STANDARD

Under New York law, "[a] plaintiff's burden of proof in a legal malpractice action is a heavy one[.]" *Lindenman v. Kreitzer*, 7 A.D.3d 30, 34 (1st Dep't 2004). To properly plead a claim for legal malpractice, a plaintiff must allege "(1) the existence of an attorney client relationship; (2) negligence on the part of the attorney or some other conduct in breach of that relationship; (3) proof that the attorney's conduct was the proximate cause of injury to the plaintiff; and (4) proof that but for the alleged malpractice the plaintiff would have been successful in the underlying action." *Grosso v. Biaggi*, 2013 WL 3743482, at *3 (S.D.N.Y. July 17, 2013) (internal quotation marks and citation omitted); *see also Moreno-Godoy v. Gallet Dreyer & Berkey, LLP*, 2015 WL 5737565, at *17 (S.D.N.Y. Sept. 30, 2015) (J. Engelmayer). As this Court has recognized, "'[g]enerally, an attorney may only be held liable for ignorance of the rules of practice, failure to comply with conditions precedent to suit, or for his neglect to prosecute or defend an action.'" *Joseph DelGreco & Co.*, 899 F. Supp. 2d at 276 (quoting *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337-38 (2d Cir. 2006). "A complaint that essentially alleges either an 'error

of judgment' or a 'selection of one among several reasonable courses of action' fails to state a claim for malpractice." *Achtman*, 464 F.3d at 337 (quoting *Rosner*, 65 N.Y.2d at 738).

A malpractice plaintiff must prove that the lawyer's alleged missteps "proximately caused plaintiff to sustain actual and ascertainable damages." *Gorbatov v. Tsirelman*, 155 A.D.3d 836, 838 (2d Dep't 2017). This heavy burden means the plaintiff "must meet a case within a case requirement, and must demonstrate that a reasonable fact-finder in the underlying suit would have arrived at a different result but for the attorney's negligence." *Schutz v. Kagan Lubic Lepper Finkelstein & Gold, LLP*, 2013 WL 3357921, at *6 (S.D.N.Y. July 2, 2013) (J. Engelmayer) (internal quotation marks and citations omitted); *see also Lieblich v. Pruzan*, 104 A.D.3d 462, 462-63 (1st Dep't 2013) (same). Moreover, a malpractice plaintiff cannot establish but-for causation without defeating a litigated affirmative defense. *See, e.g.*, *Levitin v. Rosenthal*, 903 F. Supp. 400, 403 (E.D.N.Y. 1995) (affirmative defense prevented a finding of but-for causation).

A claim against former counsel for breach of fiduciary duty under New York law requires: (1) negligence by the attorney; (2) that the negligence was the proximate cause of the loss sustained; and (3) proof of actual damages. *Stevens & Lee, P.C. v. Levine*, 2011 WL 5118169, at *1 (Sup. Ct. N.Y County Aug. 9, 2011). Generally, "assemblage and delivery of documents to the client […] is properly chargeable to the client under customary fee schedules of the firm." *Sage Realty Corp. v. Proskauer Rose Goetz Mendelsohn LLP*, 91 N.Y.2d 30, 38 (1997). A plaintiff claiming breach of fiduciary duty for failure to turn over a client file must "actually explain how defendants' failure to turn over the case files contributed to his resolving his case for considerably less money than he would otherwise have received." *Prout v. Vladeck*, 316 F. Supp. 3d 784, 808 (S.D.N.Y. 2018).

## ARGUMENT

**I.   THE REPLACEMENT TRUSTEE'S FIRST CLAIM FAILS BECAUSE HE HAS NOT ALLEGED GROUNDS FOR EITHER NEGLIGENCE OR CAUSATION.**

Even after amending his complaint, the Replacement Trustee's first claim of legal malpractice still amounts to nothing more than second-guessing Brown Rudnick's strategic choices in litigating the Preference Claim.  Nowhere in the FAC are there allegations that Brown Rudnick missed a deadline, pursued claims against the wrong party, failed to follow applicable procedural rules, failed to comply with conditions precedent, ignored binding and unambiguous precedent, or neglected to prosecute the Preference Claim.  Where, as here, there are no allegations of such clear-cut shortcomings, courts routinely dismiss claims for malpractice under New York law.  *See, e.g., Achtman*, 464 F.3d at 337 ("Generally, an attorney may only be held liable for ignorance of the rules of practice, failure to comply with conditions precedent to suit, or for his neglect to prosecute or defend an action.") (internal quotations marks and citation omitted); *Bison Capital Corp. v. Hunton & Williams LLP*, 2016 WL 4094717, at *2 (Sup. Ct. N.Y. County July 28, 2016) (decision to offer expert testimony is a "professional decision[] related to trial strategy and [is] not actionable as a matter of law.").

**A.   Brown Rudnick's Decision to Focus Primarily on LBI's Consolidated Insolvency Was Reasonable.**

Despite the addition of substantial verbiage, the FAC's allegations of negligence are merely hindsight criticism of Brown Rudnick's viable strategic choices in pursuing the Preference Claim and, thus, cannot serve as the basis for a claim for legal malpractice.

9

### 1.     Focusing on LBI Was a Viable Litigation Strategy.

The Replacement Trustee principally alleges that focusing on the standalone insolvency of Lyondell would have "easily" established the insolvency element of the Preference Claim.[6]   That does not come close to pleading negligence.   To begin with, the FAC does not contain a single allegation that Brown Rudnick's decision to focus on LBI's consolidated insolvency was not itself a viable method of establishing the Preference Claim.   Indeed, Access acknowledged that proving LBI's insolvency would have sufficed to establish the Preference Claim's insolvency element.   *See* Ex. 23, Defendants' Proposed Findings of Fact and Conclusions of Law at 176 ("the Trustee has not carried his burden to show that **LBI was insolvent** at the time of the October Repayments") (emphasis added).   Because the FAC does not contest that a focus on LBI's consolidated insolvency represented a viable (and well-trodden) path to proving the insolvency of Lyondell,[7] he cannot show that his favored course was anything but "one among several reasonable courses of action," which "does not constitute malpractice" as a matter of law.   *Rosner*, 65 N.Y.2d at 738.

---

[6] It is axiomatic that adverbs and adjectives do not constitute well-pled facts.   Terms such as "easily," "shockingly," "clearly," "botched," "obviously," and "wrong" – as well as the FAC's speculation about "the likely reason for" certain actions – need be given no weight.   *See, e.g., Conway v. Conway*, 2019 WL 1331624, at *7 (S.D.N.Y. Mar. 25, 2019) ("Although the First Amended Complaint makes liberal use of adjectives and adverbs to describe the Enterprise's supposed actions, Plaintiffs have entirely failed meet their burden to explain how the Enterprise's conduct, if proven, would constitute a predicate act."); *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 96 F. Supp. 3d 325, 344 (S.D.N.Y. 2015) ("[A]dverbs are not facts, and the addition of terms such as 'deliberately' or 'willfully' does not prove scienter. Nor does speculation, and Plaintiffs' conclusory allegations that DTTC 'must have taken' certain steps or decided, for nefarious reasons, not to take others do not fill the factual void.").

[7] *See, e.g., See, e.g., In re TOUSA, Inc.*, 422 B.R. 783, 825 (Bankr. S.D. Fla. 2009) (finding that proving insolvency of consolidated enterprise also demonstrated that individual subsidiaries were all insolvent due to joint and several liability on outstanding debt); *see also Allstate Fabricators Corp. v. Flagstaff Foodservice Corp. (In re Flagstaff Foodservices Corp.)*, 56 B.R. 899, 906-07 (Bankr. S.D.N.Y. 1986) (concluding that standalone balance sheet analysis of subsidiary debtor had to take into account issues of contribution with respect to debtor group).

In arguing that Brown Rudnick overlooked an "easy" road to victory by opting to focus first and foremost on establishing LBI's insolvency, rather than exclusively on Lyondell, the FAC ignores two critical advantages of Brown Rudnick's approach and the shortcomings of its preferred alternative approach.  First, establishing the insolvency of the LBI group as a whole sidestepped arguments that Lyondell could not be insolvent if LBI were not also insolvent.  Because LBI guaranteed Lyondell's debts, and because of the tangle of offsetting assets, liabilities, and potential contribution rights among Lyondell, LBI, and other entities within the consolidated LBI group, there was a real risk that Brown Rudnick could not have established Lyondell's insolvency *without* establishing the insolvency of the broader LBI group.  Indeed, Brown Rudnick's adversary in the underlying litigation made precisely this argument throughout the case.[8]

Establishing LBI's consolidated insolvency offered a more straightforward path to victory – one aligned with a successful strategy executed in contemporaneous bankruptcy cases.  Indeed, ***even the Bankruptcy Court itself*** observed that "[e]ssential to the Trustee's […] preference claim [is] proving that LBI was insolvent […] on October 16, 17, and 20 of 2008, when the loan repayments were made," *see In re Lyondell Chem. Co.*, 567 B.R. at 63, underlining a very real risk to the Replacement Trustee's "easy" strategy of focusing exclusively on Lyondell's standalone insolvency.  Brown Rudnick's decision to offer evidence of LBI's consolidated insolvency thus offered a more defensible and arguably necessary path to prevailing on the Preference Claim.

Second, Brown Rudnick's strategy of focusing primarily on LBI's insolvency offered additional benefits in the larger context of the *Blavatnik* litigation, particularly in light of the

---

[8] *See* Ex. 15 at 209:20-21 ("I don't think Lyondell can be insolvent if LBI isn't insolvent."); Ex. 13 at 17 ("one reason LBI must be valued on a consolidated basis to inform the valuation of Lyondell is to determine Lyondell's share of the Senior Secured and Bridge Loan claims, a critical first step in any standalone valuation of Lyondell." ); Ex. 24, Brief for Defendants-Appellees at 62 ("Lyondell could not be insolvent while LBI was solvent.").

Trust's $500 million Toehold Claim, which was being litigated in the same proceeding. In prosecuting the Toehold Claim, Brown Rudnick argued that as a result of the cash-out merger structure of the LBO, the LBI group was rendered insolvent. Given that its expert had already issued an opinion on LBI's consolidated insolvency as of December 2007 to support the Toehold Claim, it was sensible for the same expert to perform the same analysis as of October 2008 to support the Preference Claim – building a coherent narrative to underpin both claims and, again, presenting a cleaner, simpler narrative for the fact-finder.[9] The Replacement Trustee does not account for that consideration *at all* in his calculus.

In short, Brown Rudnick took the steps any attorney of ordinary reasonable skill would take – namely, researching the relevant case law and analyzing the relevant strategic considerations for litigation. Accepting the FAC's allegations as true, they do no more than highlight the fact that there were risks and advantages to alternative strategies. They do not establish that Brown Rudnick's strategy was unreasonable, and thus cannot serve as the basis of a legal malpractice action. *See Kassel v. Donohue*, 127 A.D.3d 674 (1st Dep't 2015) ("The allegations . . . reflect plaintiff's dissatisfaction with defendants' strategic choices […]; there is no showing that those choices and tactics were unreasonable[.]"); *Bernstein v. Oppenheim & Co.,* 160 A.D.2d 428, 431 (1st Dep't 1990) (same); *Williams v. Havas*, 1996 WL 626347, at *2 (2d Cir. Oct. 30, 1996) (noting that an attorney is "not held to the rule of infallibility.") (internal quotation marks and citation omitted).

---

[9] The record belies the FAC's suggestion, *see* FAC at 10 n.8, that Mr. Maxwell had earlier opined that LBI was solvent as of January 2009 in connection with a financing dispute. Mr. Maxwell's January 2009 declaration did not purport to value LBI; instead, it identified flaws in opposing expert Duff & Phelps' methodology, which could lead to an underestimation of LBI's enterprise value. *See* Ex. 25, January 2009 Maxwell Declaration. His declaration makes clear that he performed only a preliminary analysis – not a formal valuation. *Id.* ¶ 8. Regardless, the FAC concedes that choosing Mr. Maxwell as an expert was not negligence. *See* FAC at 10 n.8.

## 2.    The Intercompany Note Was Not A Silver Bullet.

The Replacement Trustee's assertion that Brown Rudnick committed malpractice merely by failing to introduce an actual photocopy of the "Intercompany Note" borders on the absurd. The idea that the introduction of a photocopy of this one debt instrument would have allowed the Trustee to "easily" establish the Preference Claim has no basis in fact.  Although the FAC makes much of the fact that a true and accurate copy of the note was not entered into evidence, it notably fails to – and indeed cannot – allege that Brown Rudnick neglected to introduce ample evidence of the note's existence and effect.  The record of the underlying litigation clearly shows that during the trial, including at closing arguments and in its post-trial submissions, Brown Rudnick made the very arguments regarding Lyondell's standalone insolvency that the FAC would have had Brown Rudnick advance.[10]

Contrary to the Replacement Trustee's allegations, there is no requirement that counsel introduce copies of a party's debt instruments.  If that were the case, the Lyondell trial record would necessarily have involved millions of pages of exhibits (as would any other similar trial involving companies with complex capital structures).  *See Bison Capital Corp.*, 2016 WL 4094717, at *2 (failure to introduce SEC reports was non-actionable strategic trial decision). Counsel can decide to introduce evidence of a debt in whatever manner it determines will be most effective.  *See Hatfield v. Herz*, 109 F. Supp. 2d 174, 184-85 (S.D.N.Y. 2000) (rejecting summary

---

[10] *See* Ex. 15 at 37:4-10 ("I've mentioned it before - - the eight-billion-dollar inter-company debt. This renders Lyondell's own separate company debt alone; that is, its own obligor debt, forgetting guarantees, almost equal to Mr. Maxwell's opinion of value of the entire LBI enterprise as of the transfer date; and, thus, clearly well in excess of Lyondell's alone valuation"); *see also* Ex. 26, Trustee's Proposed Findings of Fact ¶ 881 ("After properly adjusting for the $8.0 billion Related Party Note . . . Lyondell had, according to its own bankruptcy schedules, approximately $27.397 billion in total liabilities [thus rendering the company insolvent]."), Ex. 27, *Designation No. 964 – Lyondell 3Q 2008 10-Q* at 37.

judgment arguments that defendant's failure to introduce a number of "critical documents" into evidence at trial constituted legal malpractice and finding that such evidence would have been cumulative of evidence presented through other means, making defendant's decision "a reasonable strategic choice, not subject to [plaintiff's] second-guessing after the fact.").  Here, Brown Rudnick chose to introduce evidence of Lyondell's insolvency, including evidence of the Intercompany Note, without introducing a photocopy of the actual note.[11]  The FAC contains no allegations that explain why the introduction of the actual note would have made any difference, especially where Access acknowledged the $8 billion debt during closing arguments.  *See* Ex. 15 at 210:22-211:2 ("I think [the $8 billion inter-company debt] probably does need to be considered . . . in considering the standalone solvency of Lyondell.").  While the Replacement Trustee can rue, with the benefit of hindsight, that the strategy Brown Rudnick chose was not ultimately successful, "[t]he perfect vision and wisdom of hindsight is an unreliable test for determining the past existence of legal malpractice."  *Darby & Darby*, 95 N.Y.2d at 315 (quoting Ronald E. Mallen, *Recognizing and Defining Legal Malpractice*, 30 S.C. L. Rev. 203, 210 (1979)).

Moreover, proving Lyondell's standalone insolvency was far from "a matter of simple arithmetic."  FAC ¶ 3.  The FAC's claim that "adding the $8 billion in Lyondell's intercompany debt to Access's version of Lyondell's balance sheet rendered Lyondell insolvent by billions of

---

[11]  The FAC's inflammatory allegation that Brown Rudnick deemed the Intercompany Note "immaterial," *see* FAC ¶ 49, is at odds with the record.  Brown Rudnick took the unremarkable position that, as an intercompany obligation that nets out in analyzing LBI's consolidated solvency, the Intercompany Note did not create a factual dispute that would preclude summary judgment – particularly given that the motion for summary judgment presented LBI's consolidated insolvency as an alternative way to establish the insolvency element should Lyondell's statutory presumption of insolvency not suffice.  *See* Ex. 12 at 15 n.65; Ex. 28, Trustee's Statement of Objections and Responses to the Statement of Additional Facts of Access at 13, 108 ("The Trustee responds . . . by disputing that such paragraphs are material to determination of the Trustee's motion for summary judgment.").

dollars," *id*., is flatly contradicted by language that the FAC later quotes:  the District Court found it "legally and factually insufficient" to simply take the book value of the Intercompany Note to calculate Lyondell's liabilities because "the balance-sheet insolvency inquiry is 'fair value,'"[12] FAC ¶ 108 (citing *In re Lyondell Chem. Co.*, 585 B.R. at 63).

> **B.**     **The Replacement Trustee's Further Allegations Do Not Plead Malpractice.**

The remainder of the Replacement Trustee's allegations as to its first claim likewise do not establish negligence.  They offer no more than a hodgepodge of internally inconsistent criticisms.

> **1.**     **The Replacement Trustee's Criticism of Brown Rudnick's Summary Judgment Actions Is Misplaced And Legally Irrelevant.**

The Replacement Trustee argues that "Brown Rudnick's analysis of the wrong debtor caused the Trust not only to lose its motion for summary judgment, but also the presumption of insolvency."  FAC ¶ 41.  That allegation misses the mark for numerous reasons.  First, although Brown Rudnick argued in the alternative at summary judgment that LBI was insolvent, it ***did*** invoke the statutory presumption of ***Lyondell's*** standalone insolvency in the first instance.  *See* Ex. 12 at 14-15, n.65.  The Replacement Trustee's allegations thus not only ignore Brown Rudnick's strategy, but also the record.  The Bankruptcy Court did not reject the presumption of insolvency because Brown Rudnick failed to invoke it; rather, it credited the non-expert evidence that Access used to oppose the presumption.  Although Brown Rudnick vigorously challenged Access's methodology, arguing that its non-expert evidence did not "support a fair valuation of Lyondell's assets in mid-October 2008," *see* Ex. 29, Trustee's Summary Judgment Reply

---

[12] For example, the less a transaction looks like arm's-length lending, the more likely a court will treat the transaction as equity.  *See In re AutoStyle Plastics, Inc.*, 239 F.3d 726 (6th Cir. 2001) (holding that a bankruptcy court has the equitable power to recharacterize debt as equity and setting out 11 factors for consideration).  Indeed, the Intercompany Note was ultimately treated as a capital contribution.  *See* Ex. 4 at 48.

Memorandum of Law at 12, the Bankruptcy Court held that Lyondell's insolvency required further fact-finding at trial.  Ex. 14 at 4.

The Replacement Trustee's arguments to the contrary notwithstanding, it would have made no difference to that summary judgment determination had Brown Rudnick specifically introduced a photocopy of the Intercompany Note.  Indeed, even the Replacement Trustee himself admits that Access had raised questions regarding the LBI group's financial entanglements, thereby creating a genuine dispute that defeated the presumption of insolvency.  *See* FAC ¶ 44 ("Access … argued that because it was disputed whether Lyondell was liable under any guarantees, there was sufficient evidence [that Lyondell was solvent] to rebut the presumption of insolvency.").

Inexplicably, the Replacement Trustee then proceeds to criticize Brown Rudnick for attempting to introduce evidence at trial to prove insolvency, rather than relying on the very presumption that the Bankruptcy Court had rejected at summary judgment.  Trying to prove Lyondell's insolvency at trial did not amount to "negligently conced[ing]" that it bore the burden of proof.  Rather, doing so was responsive to the judge's invitation to present affirmative evidence establishing Lyondell's insolvency in case the court continued to reject the presumption of insolvency – rather than remaining silent until Access presented the same evidence of solvency that had already rebutted the presumption.  *See* FAC ¶ 55 ("reasonably prudent counsel would have forced Access to attempt to introduce evidence to rebut the presumption of insolvency.").  The FAC's preferred approach not only would have been nonsensical, but is the kind of tactical decision about when to present evidence that New York's courts have repeatedly recognized cannot support a claim of malpractice.  *See*, *e.g.*, *Bison Capital Corp.*, 2016 WL 4094717, at *2.

### 2.    Criticisms of an Expert's Analysis do not Establish Legal Negligence.

The Replacement Trustee also attacks perceived shortcomings in the substance of Mr. Maxwell's expert report and testimony with respect to insolvency.  But complaints against an

*expert's* testimony do not state a claim for malpractice against a party's **attorney**.[13]  As such, the Replacement Trustee's allegations cannot state a claim of negligence against Brown Rudnick.[14] In an attempt to pin his dissatisfaction with Mr. Maxwell on Brown Rudnick, the Replacement Trustee alleges – record evidence notwithstanding – that Brown Rudnick failed to instruct Mr. Maxwell to value the correct debtor as of the correct date.  FAC ¶¶ 36, 106.  Remarkably, he also suggests that Brown Rudnick should have interfered with Mr. Maxwell's expert determination of which data was reliable in forming his expert analysis.  *See id.* ¶ 10.  Neither criticism can serve as the basis for a malpractice claim against Brown Rudnick.

As a threshold matter, the Replacement Trustee fails to show that Brown Rudnick's primary strategy of demonstrating Lyondell's insolvency through LBI's insolvency was unreasonable.  Far from opining on the "wrong debtor," therefore, Mr. Maxwell's focus on the consolidated LBI group accorded with the reasonable strategy that Brown Rudnick was pursuing.

The Replacement Trustee's complaints regarding the **mechanics** of Mr. Maxwell's analysis not only fail to state a claim against Brown Rudnick, but are baseless.  For instance, the Replacement Trustee makes much of the fact that Mr. Maxwell relied on projections adopted by LBI's board in December 2008 (the "December 2008 Projections") to show LBI's consolidated insolvency as of October 2008.  But this was objectively reasonable in light of the significant evidentiary challenges of the case, as the record shows that there **never** existed any projections adopted in October 2008.  *See* Ex. 23 ¶ 179 ("LBI did not prepare or have prepared any valuations

---

[13]  The true object of the Replacement Trustee's ire appears to be the negative reaction to Mr. Maxwell's testimony at trial on the part of Judge Glenn, who had inherited the case after motions for summary judgment had been fully briefed, following Judge Gerber's retirement.

[14]  The FAC disavows any attempt to challenge Brown Rudnick's choice of expert.  *See* FAC at 10 n.8.  That is unsurprising, as Mr. Maxwell was and is an accomplished expert, and the Bankruptcy Court permitted him to testify on the issue of insolvency.  *See* Ex. 30, Plaintiff's Post-Trial Brief at 20-21; Ex. 26, Trustee's Proposed Findings of Fact at 259-273.

of itself or Lyondell between December 2007 and October 20, 2008.").  Mr. Maxwell's decision to rely on the December 2008 Projections was within his expertise rather than Brown Rudnick's; and the fact-finder's later criticism of those projections does not make Mr. Maxwell's decision unreasonable.[15]   Reasoned "[d]ecisions regarding the evidentiary support" for a claim are "strategic decisions" that simply cannot give rise to legal malpractice liability.  *See Brookwood Cos. v. Alston & Bird LLP*, 146 A.D.3d 662, 667 (1st Dep't Jan. 26, 2017) (same); *see also Leder v. Spiegel*, 9 N.Y.3d 836, 837 (2007) (An "allegation regarding […] failure to anticipate the court's evidentiary rulings – even if accepted as true – does not establish negligence.").

The Replacement Trustee suggests for the first time in the FAC that Brown Rudnick committed an error of law by allowing Mr. Maxwell to perform a flawed "retrojection" analysis. *See* FAC ¶ 9.  But this is a red herring – the retrojection doctrine applies only when a debtor seeks to show insolvency on Date A by showing insolvency on Date B.  *See, e.g., In re Jesup & Lamont, Inc.*, 507 B.R 452, 473 (Bankr. S.D.N.Y. 2014).  Here, Mr. Maxwell did not attempt to show LBI's insolvency in October 2008 by showing LBI's later insolvency.  Rather, he used December 2008 materials that themselves assessed the financial position of LBI *as of October 2008*.  In other words, the evidence on which he relied directly addressed LBI's (and therefore Lyondell's) insolvency) in October 2008 – not some later date.  *See* Ex. 31, February 28, 2011 Expert Report of Anders Maxwell at 5.  The Court thus need not credit the Replacement Trustee's charge that Mr. Maxwell "use[d] the wrong date."

---

[15]  Indeed there was substantial record evidence that those projections had, in fact, been prepared earlier in the autumn, within days of the Preference Claim payments.  *See* Ex. 16 at 51-52 (citing a presentation dated October 22, 2008, which showed that the December 2008 Projections were scheduled to be completed on October 24, 2008 and noted that "[a]ll divisions report they are on track for submission by October 24.") (citation omitted).

The Replacement Trustee also claims that had Brown Rudnick simply instructed Mr. Maxwell to instead use projections from April 2008, "it would have been straightforward to establish that Lyondell was insolvent in October 2008." *See* FAC ¶¶ 93-94.  But this is off base for multiple reasons.  First, Mr. Maxwell did consider the April 2008 forecasts, but judged them to be unreliable because they were based on November 2007 projections that had been reverse-engineered to match target cash flow around the time of the LBO.  *See* Ex. 31 at 5-6.  Second, it would have been highly improper for Brown Rudnick to demand that Mr. Maxwell use projections that he considered unreliable, as the Replacement Trustee now suggests it should have done. Lawyers are not charged with telling expert witnesses how to prepare their opinions or dictating the substance of their opinions, nor can they ethically do so.  *See, e.g.*, *Numatics, Inc. v. Balluff, Inc.*, 66 F. Supp. 3d 934, 941-45 (E.D. Mich. 2014) (finding a "remarkable breach of ethics and protocol" and striking an expert report that did "not represent [the expert's] own commentary on the evidence" or "his own reasoned views on the case" because counsel's interventions had rendered the expert "merely a party's avatar" and "nothing more than a highly qualified puppet") (internal citations omitted); *see also* Fed. R. Civ. P. 26(a)(2)(B) (expert reports must be "prepared and signed by the witness").  A lawyer cannot be held negligent for failing to override an expert's independent judgment in an area within that expert's expertise.

### C.  The Replacement Trustee Fails to Allege that Brown Rudnick's Strategic Decisions Proximately Caused The Trust Injuries.

Even if the FAC contained allegations that could establish negligence, which it does not, the Replacement Trustee has not come close to adequately alleging that Brown Rudnick's strategic decisions proximately caused the Trust to lose the Preference Claim.  While the FAC is replete with criticisms that Brown Rudnick did not adopt one specific strategy for proving Lyondell's standalone insolvency, it contains no allegations that explain how the Replacement Trustee's

preferred strategy would have succeeded.  As discussed above, the Bankruptcy Court specifically stated that in order to establish Lyondell's insolvency for purposes of the Preference Claim, the Trustee would have had to show **the entire LBI group** was insolvent as of October 2008.  *See* Section I.A.1, *supra*.  Ignoring this burden, the FAC's only allegations related to LBI's insolvency are that Brown Rudnick's alleged choice of certain financial projections "doomed its attempt to use LBI's insolvency [] as a basis to argue, indirectly, that Lyondell was insolvent."  *See* FAC ¶ 9. The FAC's allegations thus do not satisfy the "case within a case" standard as a matter of law, *see Warshaw Burstein Cohen Schlesinger & Kuh, LLP v. Longmire*, 106 A.D.3d 536 (1st Dep't 2013) (affirming dismissal where counterclaimant failed to show that he would have established *prima facie* case), and as a result do not allege facts that would establish proximate cause.

Furthermore, in opposing the Preference Claim, Access fully litigated an affirmative defense that the alleged preferential transfers were not preference payments because they had been made in the ordinary course of business.[16]  When an affirmative defense has been litigated, the malpractice plaintiff cannot establish but-for causation without alleging facts that would establish that it would have defeated the affirmative defense.  *See*, *e.g.*, *Nitis v. Goldenthal*, 128 A.D.2d 687, 688 (2d Dep't 987).[17]  But the Replacement Trustee makes only conclusory allegations that Access's defense would have lost, *see*, *e.g.*, FAC ¶ 118 ("At bottom, the repayment of the Access

---

[16] Only in response to Brown Rudnick's motion to dismiss the original complaint in this action, *see* Dkt. Nos. 12-13, does the Replacement Trustee for the first time acknowledge the existence of this critical trial issue in his FAC, *see id.* ¶¶ 113-119.

[17] While some New York courts have found that defendants in malpractice cases bear the burden of demonstrating that an affirmative defense would have defeated the plaintiff client's case, *see, e.g. Romanian Am. Interests, Inc. v. Scher*, 94 A.D.2d 549, 554 (2d Dep't 1983), those cases are inapposite where, as here, the record establishes that Access's ordinary-course affirmative defense proceeded to trial, *see* Ex. 14 at 8-9, and Access introduced substantial evidence, which it emphasized in post-trial briefing.

Revolver had the hallmarks of a preference payment . . ."), and thus fails to meet his burden of showing that he would have prevailed at trial but for Brown Rudnick's purported negligence.

## II.     THE REPLACEMENT TRUSTEE'S SECOND CLAIM FAILS BECAUSE THE TRUST ADVISORY BOARD WAS NOT BROWN RUDNICK'S CLIENT.

The Replacement Trustee's second claim asserts that Brown Rudnick committed malpractice by failing to apprise the Trust Advisory Board of its purported litigation errors, and failing to advise the Trust Advisory Board to accept a substantial settlement. That claim fails as a matter of law for numerous reasons. First, it is based on the same flawed theory as the first malpractice claim. Because the Replacement Trustee has not alleged that Brown Rudnick's trial strategy was unreasonable, there could not have been a duty to report negligence.

Second, and crucially, the Trust Advisory Board was not a Brown Rudnick client. Absent an attorney-client relationship between Brown Rudnick and the Trust Advisory Board, Brown Rudnick could not have breached any duty owed to it. As the FAC makes clear, Brown Rudnick was engaged to represent Mr. Weisfelner as Trustee and the Trust – not the Trust Advisory Board or any of its individual members. *See* FAC ¶ 21. While the FAC appears to conflate Brown Rudnick's duties to the Trustee, the Trust, and the Trust Advisory Board, it alleges no basis for doing so. The Engagement Letter makes clear that Brown Rudnick had an attorney-client relationship only with Mr. Weisfelner as Trustee and with the Trust. *See* Ex. 7, Ex. A. At best, the Trust Advisory Board was a third-party beneficiary of Brown Rudnick's representation of the Trustee. That, however, is no substitute for an attorney-client relationship.[18] Thus, allegations of failure to apprise and advise the Trust Advisory Board offer no support for a claim of malpractice.

---

[18] *See, e.g., Chinello v. Nixon, Hargrave, Devans & Doyle, LLP*, 15 A.D.3d 894, 895 (4th Dep't 2005) (refusing to find law firm representing trustee liable for breach of fiduciary duty to third-party beneficiary of trust); *Matter of Newhoff's Will*, 107 Misc. 2d 589, 597-98 (Sup. Ct. Nassau County Dec. 18, 1980) (finding trust beneficiaries could not assert legal malpractice action against

Moreover, the FAC is silent as to what information Brown Rudnick provided, or failed to provide, to its client, Mr. Weisfelner, as the original Trustee, regarding the trial, strategy, and settlement discussions.  The Replacement Trustee has no personal knowledge of Brown Rudnick's communications with Mr. Weisfelner.  And because the Replacement Trustee did not so much as interview Mr. Weisfelner regarding the information that Brown Rudnick provided to him regarding settlement,[19] any allegations regarding such actions are pure speculation and need not be accepted as true for purposes of a motion to dismiss.  *See Katz v. Essner*, 136 A.D.3d 575, 575-76 (1st Dep't 2016) (affirming dismissal of complaint where "plaintiff's allegations in support of his legal malpractice claim … remain[ed] conclusory, speculative, and contradicted by the documentary evidence submitted on the motion to dismiss[.]").

## III.   THE REPLACEMENT TRUSTEE CANNOT SHOW BREACH OF A FIDUCIARY DUTY AND FAILS TO PLEAD CAUSATION AND DAMAGES

In amending his complaint, the Replacement Trustee has added a claim for breach of fiduciary duty based on Brown Rudnick's alleged failure to provide him with a copy of the Trust's client file.  *See* FAC ¶¶ 143-148.  Because he fails to allege a plausible breach of Brown Rudnick's duties to a former client or that any harm whatsoever resulted from Brown Rudnick's actions, his third claim must be dismissed.

---

attorneys as there was no privity of contract between the parties); *Mason Tenders Dist. Council Pension Fund v. Messera*, 4 F. Supp. 2d 293, 300 (S.D.N.Y. 1998) (finding personal attorney for trustee of funds had no attorney-client relationship with the funds, and could not be sued for malpractice by the funds, even though funds paid attorney's fees).

[19] Had the Replacement Trustee conducted such an interview, he would have been informed that Brown Rudnick did in fact keep Mr. Weisfelner and the Trust Advisory Board intimately apprised of the status of its settlement negotiations with Access.  Moreover, because the Replacement Trustee refused to bear the cost of having Brown Rudnick assemble the Trust's client file prior to filing his complaint – including Brown Rudnick's written communications with Mr. Weisfelner – the Replacement Trustee cannot be heard to complain that Brown Rudnick has not provided the file to him.  Indeed, Brown Rudnick lined up the resources to prepare the client file months before the Replacement Trustee filed the original Complaint.  *See* Ex. 7, Miliband Decl. ¶ 4.

First, the FAC does not and cannot allege facts that would show that Brown Rudnick breached a duty to the Replacement Trustee, where the documentary evidence to which the FAC refers, *see id*. ¶¶ 122-125, shows that the Replacement Trustee refused to pay for Brown Rudnick to assemble the Trust's client file, and had no exigent need for the file since the case was long over, *see* Exs. 18-22.[20]   Brown Rudnick had no obligation to provide him the client file at its own expense.  It is well-settled in New York that the costs associated with preparing a former client's file are properly chargeable to the former client.   *See Sage Realty Corp.*, 38 N.Y.2d at 38 ("assemblage and delivery of documents to the client […] is properly chargeable to the client under customary fee schedules of the firm"); *Moore v. Ackerman*, 24 Misc. 3d 275, 280 (Sup. Ct. Kings County 2009) (same).  Nor does the Replacement Trustee allege any circumstances that would require production of the client file before payment for the costs of assembling it were assured. *See, e.g., Sustainable Pte Ltd. v. Peak Venture Partners LLC*, 2018 WL 4181718, at *2 (Sup. Ct. N.Y. County Aug. 31, 2018) (requiring former attorney to turn over client file only if former client made a deposit to cover the time and expense required to assemble and provide the requested documents); *Am. Stevedoring, Inc. v. Red Hook Container Terminal, LLC*, 134 A.D.3d 419, 419 (1st Dep't 2015) (court erred in not directing former client to bear the costs of reproducing and delivering its litigation file, including ensuring payment for legal services).

The Replacement Trustee also does not even attempt to plead the causation and damages elements of his third claim.  The FAC does not allege that any damages resulted from Brown Rudnick's alleged breach of fiduciary duty, instead requesting only that the Court "award Plaintiff

---

[20] For example, following the Replacement Trustee's refusal to assure payment for the cost of assembling the file, Brown Rudnick pointed him to multiple authorities, all noting that, under New York law, a lawyer has the right to be paid for the preparation of a client file.  *See* Ex. 21, July 23, 2019 Letter.

damages in an amount to be proven at trial." *See id.* ¶ 148.  When a plaintiff fails to plausibly plead that he actually suffered damages as a result of the former attorney's failure to turn over the former client's file, the claim for breach of fiduciary duty must be dismissed.  *See, e.g.*, *Prout*, 316 F. Supp. 3d at 808 (dismissing claim for breach of fiduciary duty, finding former client's allegations that he received less money for his case than he otherwise would have as a result of his former attorney's failure to turn over case files to his new attorney did not constitute plausible allegations of proximate cause or damages).  Because there is no allegation that ***any*** damages whatsoever resulted from an alleged breach, the FAC's third claim must be dismissed.

## <u>CONCLUSION</u>

For the reasons set forth above, the Replacement Trustee's claims should be dismissed in their entirety with prejudice, and this Court should grant such other relief as it deems appropriate. Oral argument is respectfully requested.

Dated: February 26, 2020

Respectfully submitted,

LATHAM & WATKINS LLP


By:  s/Christopher J. Clark
      Christopher J. Clark
      Nicholas Lloyd McQuaid
      Virginia F. Tent
      Rakim E. Johnson
      Sindhu Boddu
      885 Third Avenue
      New York, New York 10022-4834
      Telephone:  (212) 906-1200
      Facsimile:  (212) 751-4864
      chris.clark@lw.com
      nicholas.mcquaid@lw.com
      virginia.tent@lw.com
      rakim.johnson@lw.com
      sindhu.boddu@lw.com

      *Attorneys for Defendant*
      *Brown Rudnick LLP*