**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MARK E. HOLLIDAY, as Trustee of the LB
Litigation Trust,

                Plaintiff,

     v.

BROWN RUDNICK LLP,

                Defendant.

No. 1:19 Civ. 10925 (PAE) (SN)


**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

I.  The Replacement Trustee Does Not Identify Any Plausible Allegations of Fact That Would Establish Negligence ......................................................................................2

    A.  The Replacement Trustee Concedes that an Attorney's Selection Among Several Reasonable Courses of Action Does Not Constitute Malpractice .............2

        1.  The Replacement Trustee Does Not Identify Credible Allegations of Fact That Would Support A Finding of Negligence...............................3

        2.  The Replacement Trustee Continues to Make the Unsupported Argument that the Intercompany Note Would Have "Easily" Succeeded in Proving Lyondell's Standalone Insolvency. ..........................5

    B.  The Replacement Trustee Identifies No Facts in Support of His Further Allegations of Malpractice .........................................................................................6

        1.  The Replacement Trustee's Criticism of Brown Rudnick's Summary Judgment Actions is Unsupported by Law or Facts...................6

        2.  The Replacement Trustee Fails to Establish that Legal Malpractice Can Rest on a Qualified Expert's Expert Determinations. ..........................8

II.  The Replacement Trustee Does Not Identify Any Plausible Allegations of Fact That Would Establish Causation....................................................................................8

III.  The Replacement Trustee Does Not Identify Any Facts or Law to Support His Second Claim .................................................................................................................9

IV.  The Replacement Trustee Belatedly Attempts to Plead in His Briefing the Elements of Causation and Damages to Support His Third Claim That He Omitted From His Complaint .........................................................................................................9

V.  Conclusion .................................................................................................................10

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Ackerman v. Kesselman*,
  100 A.D.3d 577 (2d Dep't 2012) .............................................................................2

*Acthman v. Kirby, McInerney & Squire, LLP*,
  464 F.3d 328 (2d Cir. 2006) ...................................................................................3

*Hashmi v. Messiha*,
  65 A.D.3d 1193 (2d Dep't 2009) .............................................................................3

*In re Flagstaff Foodservices Corp.*,
  56 B.R. 899, 906-07 (Bankr. S.D.N.Y. 1986) .........................................................4

*In re Gibson*,
  No. 13-15635-7, 2016 WL 489611 (Bankr. W.D. Wis. Feb. 8, 2016) .....................6

*In re Lyondell Chem. Co.*,
  585 B.R. 41 (S.D.N.Y. 2018) ..................................................................................7

*In re TOUSA, Inc.*,
  422 B.R. 783, 829 (Bankr. S.D. Fla. 2009), *quashed in part*, 444 B.R. 613
  (S.D. Fla. 2011), *aff'd in part, rev'd in part*, 680 F.3d 1298 (11th Cir. 2012),
  *and aff'd*, No. 10-CV-62035, 2017 WL 8785510 (S.D. Fla. Mar. 8, 2017) ............4

*Prout v. Vladeck*,
  371 F. Supp. 3d 150 (S.D.N.Y. 2019) .....................................................................8

*Rosner v. Paley*,
  65 N.Y.2d 736 (1985) .............................................................................................1

*Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn L.L.P.*,
  91 N.Y.2d 30 (1997) ...........................................................................................9, 10

*Southwick Clothing LLC v. GFT (USA) Corp.*,
  No. 99-cv-10452, 2004 WL 2914093 (S.D.N.Y. Dec. 15, 2004) .......................7, 10

Despite abandoning several arguments that featured prominently in his complaint, the Replacement Trustee[1] maintains that his claim boils down to the contention that Brown Rudnick committed malpractice by valuing the "wrong debtor" on the "wrong date."  But he effectively admits that the firm's strategic approach was viable (i.e., that Brown Rudnick did not focus on the wrong debtor).  And the record is clear that Brown Rudnick's expert assessed insolvency as of the proper date.  As such, the Replacement Trustee is left with no more than an argument about **how** Brown Rudnick sought to prove Lyondell's insolvency.  His hindsight-biased criticism of Brown Rudnick's decisions[2] does not come close to alleging the rare and stark facts necessary to plead that an attorney's strategic litigation decision amounts to malpractice.

Recognizing the risks associated with trying to show Lyondell's standalone insolvency, Brown Rudnick principally sought to establish Lyondell's insolvency at trial by proving the insolvency of Lyondell's parent, LBI.  The Replacement Trustee now argues that Brown Rudnick should have **led** with the standalone strategy and does not challenge that it should also have pursued a consolidated LBI insolvency strategy.  That is, he does not seriously contest that proving LBI's insolvency was a viable path to proving Lyondell's insolvency; he himself draws the analogy to where a driver has "two paths to get home."  Because "a selection of one among several reasonable courses of action does not constitute malpractice," *Rosner v. Paley*, 65 N.Y.2d 736, 738 (1985), that admission is fatal to the Replacement Trustee's case.

In an attempt to evade that precedent, the Replacement Trustee falls back to arguing that Brown Rudnick's chosen strategy was "strewn with obstacles," while (in the Replacement

---

[1]  Unless defined herein, capitalized terms have the meaning assigned to them in Brown Rudnick's memorandum of law in support of its motion to dismiss ("Br."), Dkt. No. 26, and the First Amended Complaint ("FAC"), Dkt. No. 24, and "Opp." refers to the Replacement Trustee's memorandum of law in opposition to Brown Rudnick's motion to dismiss, Dkt. No. 28.

[2]  "It is easy to be wise after the event."  Arthur Conan Doyle, *The Great Boer War* (1900).

Trustee's hindsight view) a strategy based on Lyondell's standalone insolvency offered a "safe and certain" route.  But in this case—as in most complex litigation—no route was "safe and certain" and each strategy had its own benefits and obstacles to overcome.  No matter how many times the Replacement Trustee asserts that it would have been "easy" and "simple" to prove Lyondell's standalone insolvency, he does not point to *a single case* showing that Brown Rudnick's concerns with that approach were invalid.  Repeating conclusory adjectives falls well short of the showing necessary to plead that Brown Rudnick's strategic choices were unreasonable, let alone that they caused the Trust's claim to fail.

The Replacement Trustee's remaining arguments fare no better.  His suggestion that the Trust's expert valued LBI on the "wrong date" not only is misplaced, but irrelevant: whatever criticisms the Replacement Trustee has against *the expert* does not plead a claim for *legal* malpractice against Brown Rudnick.  And the Replacement Trustee has all but abandoned his second and third claims, identifying no facts or law that would prevent their dismissal.  The FAC should therefore be dismissed in its entirety and with prejudice.

## I.   THE REPLACEMENT TRUSTEE DOES NOT IDENTIFY ANY PLAUSIBLE ALLEGATIONS OF FACT THAT WOULD ESTABLISH NEGLIGENCE

"'Under the attorney judgment rule, an attorney's selection of one among several *reasonable* courses of action does not constitute malpractice.'"  Opp. at 9-10 (emphasis in original) (quoting *Ackerman v. Kesselman*, 100 A.D.3d 577, 579 (2d Dep't 2012)).

### A.   The Replacement Trustee Concedes that an Attorney's Selection Among Several Reasonable Courses of Action Does Not Constitute Malpractice

The crux of the Replacement Trustee's first claim is that Brown Rudnick's chosen strategy was not reasonable because it valued the "wrong debtor," *see, e.g.,* FAC ¶¶ 11, 41, 48, 56, however, even he now concedes that it was a reasonable approach to value LBI.  *See* Opp. at 11 (Replacement Trustee "does not claim that Brown Rudnick should have *only* valued

Lyondell") (emphasis in original), 18 (analogizing to a situation where a driver has "two paths to get home").  And the FAC alleges no facts to show that proving Lyondell's insolvency through LBI's consolidated insolvency was not viable.  While the Replacement Trustee claims that Brown Rudnick should have tried to make the same showing through a different route he believes in hindsight was more likely to work—that is exactly the kind of *post hoc* criticism of an attorney's strategic or tactical decision at trial that is not actionable under New York law.

The Replacement Trustee has now retreated to the position that the strategy Brown Rudnick chose was one that would "subject the [Preference] [C]laim to wholly unnecessary risks" rather than "clearly win[] the Preference Claim."  Opp. at 17-18.  But he fails to grapple with the serious risks that would have accompanied a strategy prioritizing Lyondell's standalone insolvency.  *See* Br. at 10-15 (addressing the risks that the court would conclude that Lyondell could not be insolvent if LBI were solvent, and that the Intercompany Note would not be taken at face value).  In response, the Replacement Trustee repeats *ipse dixit*—without pointing to any supporting case law or expert opinion—that focusing on Lyondell's standalone insolvency would have "easily" won the case.  Opp. at 13.  His claim thus fails.

1.  **The Replacement Trustee Does Not Identify Credible Allegations of Fact That Would Support A Finding of Negligence.**

Having walked back his inflammatory conclusion that Brown Rudnick focused on the "wrong debtor," FAC ¶ 11—which the record belies—the Replacement Trustee's theory of negligence is now rooted solely in his belief that the Lyondell standalone strategy would have been more successful.  But New York law does not permit such hindsight-biased second-guessing of strategies.  *See*, *e.g.*, *Acthman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337-38 (2d Cir. 2006); *Hashmi v. Messiha*, 65 A.D.3d 1193 (2d Dep't 2009).

The Replacement Trustee attempts to muddy the waters around the relevant case law upon which the consolidated-LBI strategy was based.  In cherry-picking quotations from the *TOUSA* court, he neglects the fundamental point vis-à-vis Brown Rudnick's strategy: the *TOUSA* court concluded that the insolvency of a parent establishes the insolvency of its subsidiaries.  *In re TOUSA, Inc.*, 422 B.R. 783, 829 (Bankr. S.D. Fla. 2009), *quashed in part*, 444 B.R. 613 (S.D. Fla. 2011), *aff'd in part, rev'd in part*, 680 F.3d 1298 (11th Cir. 2012), *and aff'd*, No. 10-CV-62035, 2017 WL 8785510 (S.D. Fla. Mar. 8, 2017) ("TOUSA was insolvent after July 31, 2007—*as, by extension, were each of the Conveying Subsidiaries.*") (emphasis added).  The contemporaneous proceedings in *In re Tribune Co.* following Tribune Media Company's post-LBO bankruptcy also confirm that Brown Rudnick's approach was reasonable.  The *Tribune* examiner concluded that "for purposes of solvency and capital adequacy analysis, the liability of the Guarantor Subsidiaries on the LBO Lender Debt should be measured collectively[.]"  *See* Report of Kenneth N. Klee, as Examiner, Volume Two at 150, No. 08-13141 (Bankr. D. Del. July 26, 2010), Dkt. No. 5131.  He reasoned that offsetting assets and contribution rights would entitle subsidiaries to relieve their debts from the parent—i.e., the subsidiaries could not be insolvent unless the parent were insolvent.[3]  *See id.* at 143.  The FAC offers no basis to conclude that Brown Rudnick's strategy was anything other than credibly informed and reasonable.[4]

In the absence of factual allegations that would show Brown Rudnick's chosen strategy to have been unreasonable, the Replacement Trustee attempts to manipulate Brown Rudnick's

---

[3]  The Replacement Trustee likewise misses the import of *In re Flagstaff Foodservices Corp.*: where there are financial entanglements among consolidated companies, there is reason to doubt that a court will take intercompany debts at face value and a real risk that the tangle of offsetting liabilities, assets, and potential contribution rights would lead a court to find that a subsidiary could not be insolvent if the parent were solvent.  56 B.R. 899, 906-07(Bankr. S.D.N.Y. 1986).

[4] In the underlying case, the Access defendants never contended that establishing consolidated insolvency was insufficient to prove the Preference Claim's insolvency element.  Br. at 11 n.8.

*post hoc* statements[5] as a basis for liability.  For example, he misleadingly quotes Brown Rudnick lawyer Marek Krzyzowski's comment that debating the evidentiary basis for the bankruptcy court's non-dispositive denial of summary judgment might, on appeal, be "too little, too late."  Opp. at 6.  But as is clear in context,[6] Mr. Krzyzowski was discussing a number of arguments that might be emphasized or minimized on appeal, in light of Access's arguments and the applicable appellate standards of review – not assessing the merits of Brown Rudnick's strategic choices when made at trial.  Such statements cannot support a finding of negligence.

> **2.**     **The Replacement Trustee Continues to Make the Unsupported Argument that the Intercompany Note Would Have "Easily" Succeeded in Proving Lyondell's Standalone Insolvency.**

The Replacement Trustee fails even to engage with arguments that the Intercompany Note was not a silver bullet,[7] Br. at 13-15, instead repeating that a standalone insolvency strategy would "easily" have won.  But liberal use of adverbs is no substitute for pleading facts.

For instance, even as the FAC admits that the District Court found it "legally and factually insufficient" to simply add the book value of the Intercompany Note to value Lyondell's liabilities, *see* FAC ¶ 108, the Replacement Trustee continues to argue that the face value of the Intercompany Note need only to have been added to Access's non-expert valuation of Lyondell to establish Lyondell's standalone insolvency, Opp. at 11.  He also fails to address

---

[5] As a threshold matter, Brown Rudnick's hindsight assessment of its trial strategies ***after the bankruptcy court issued its opinion*** has no bearing on whether those trial strategies were prospectively reasonable.  Every lawyer who has lost a case thinks of something that could have been done differently.

[6] Although the Replacement Trustee has placed this communication at issue, Brown Rudnick is not providing a copy herewith in light of privilege concerns.  Brown Rudnick has no objection to providing a copy of the communication for the Court's review should it so order.

[7] The Replacement Trustee falsely asserts that Brown Rudnick "concedes" that it did not present evidence of the debt at trial.  Opp. at 13.  In fact, the firm identified the trial evidence of the note.  Br. at 13 n.10.  He also struggles to walk back the FAC's contention that not introducing a photocopy of the note was the basis for his first malpractice claim.  FAC ¶ 73; Opp. at 12.

the risk that the bankruptcy court would have treated the Intercompany Note as equity.  Br. at 15 n.12.  And his refrain that it would have been mere child's play to use the Intercompany Note to prove Lyondell's insolvency is incompatible with his admission that expert testimony would have been needed to show Lyondell's insolvency, notwithstanding the existence of the Intercompany Note.  *See, e.g.,* FAC ¶¶ 65, 73; Opp. at 14-15

### B.   The Replacement Trustee Identifies No Facts in Support of His Further Allegations of Malpractice

The Replacement Trustee does not identify any fact allegations that support his theory of malpractice based on the summary judgment phase of the underlying litigation – let alone explain how ***failing to win*** summary judgment could be malpractice.  Moreover, he continues to fault Brown Rudnick for its expert's analysis while also misrepresenting the relevant law.

### 1.   The Replacement Trustee's Criticism of Brown Rudnick's Summary Judgment Actions is Unsupported by Law or Facts.

Having first wrongly alleged that Brown Rudnick focused on the "wrong debtor" at summary judgment, *see* FAC ¶¶ 41, 48, Br. at 15 (citing Dkt. No. 27-12), the Replacement Trustee now abandons those assertions in favor of factually unsupported statements that the Trust "undisputedly would have maintained the presumption" of insolvency by focusing on the Intercompany Note.[8]  Opp. at 11.  He presumes that, to overcome the evidence Access presented at summary judgment, the Trust could have simply added the Intercompany Note to Lyondell's balance sheet in the valuations performed by Access.[9]  *See* Opp. at 12 (noting that Access

---

[8] The Replacement Trustee ***again*** makes the inflammatory allegation that Brown Rudnick deemed the Intercompany Note "immaterial."  Opp. at 12, 21.  In reality, Brown Rudnick merely stated that disputed facts about the debt did not preclude summary judgment.  *See* Br. at 14 n.11.

[9] The case that the Replacement Trustee cites for this proposition, *In re Gibson*, No. 13-15635-7, 2016 WL 489611, at *2 (Bankr. W.D. Wis. Feb. 8, 2016), is inapposite.  Not only is it outside of the Second Circuit, but it addresses whether liabilities shown on schedules filed with the court reflected debtors' true liabilities absent filed proofs of claim. *See id*.

performed "its own valuation of Lyondell's assets").  However, as the District Court noted on appeal, a balance sheet showing book value "can be a useful starting point for such an inquiry, but . . . the relevant value for the balance-sheet insolvency inquiry is 'fair value,' the value that a purchaser in the marketplace would ascribe to the asset or liability[.]"  *In re Lyondell Chem. Co.*, 585 B.R. 41, 63 (S.D.N.Y. 2018).  The Replacement Trustee also separately alleges for the first time in his opposition brief that the Intercompany Note was a "direct, non-contingent liability" in an attempt to skirt the risks to a Lyondell standalone strategy.  Opp. at 12, 13 n.36 (counterfactually suggesting that the district court had determined the Intercompany Note to be such a liability).  Not only is this assertion incorrect, it is not even alleged in the FAC, and thus should not be considered in resolving the present motion.[10]  *See Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99-cv-10452, 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004).

The Replacement Trustee's other arguments are unpersuasive.  Even though the trial judge already had rejected the presumption of insolvency at summary judgment, finding that solvency was an issue of fact at trial, *see* Dkt. No. 27-14, the Replacement Trustee claims that Brown Rudnick ought to have presented ***no*** evidence of insolvency in its case-in-chief, and waited for Access to present rebuttal evidence before trying to prove insolvency.[11]  Opp. at 13-14.  He offers no explanation for how that strategy would have succeeded aside from the conclusory statement that "Access did not even attempt to introduce its own valuation of Lyondell's assets."  Opp. at 14, citing FAC ¶ 54.  But as summary judgment made clear, the existence of factual issues prevented Brown Rudnick from relying on the presumption to

---

[10] Even when related company debts are "direct, non-contingent liabilit[ies]," courts regularly consider whether they should more properly be characterized as equity.  *See* Br. at 15 n.12.

[11] The same ignorance of strategic considerations leads the Replacement Trustee to dismiss out of hand the value of streamlining evidence during a bench trial, *see* Opp. at 20-21.

establish Lyondell's insolvency at trial.  The Replacement Trustee pleads no facts showing the contrary.

### 2.    The Replacement Trustee Fails to Establish that Legal Malpractice Can Rest on a Qualified Expert's Expert Determinations.

The Replacement Trustee continues to fault Brown Rudnick improperly for its expert's decisions while ignoring the fact that the firm could not ethically direct the expert's analysis or conclusions.  Br. at 19.  Confronted with record evidence that *the expert* chose to use the December 2008 Projections that LBI had developed in October 2008, *see* Dkt. No. 27-31, the Replacement Trustee misleadingly contends that "Brown Rudnick's reliance on the December 2008 projections," Opp. at 21; *see id.* at 22, constituted *legal* negligence.  The Replacement Trustee does not address the reality that Brown Rudnick could not properly overrule its expert's judgment and analysis, and goes so far as to suggest that Brown Rudnick should have instructed him to use April 2008 projections that he had opined in his report were unreliable.  Opp. at 22.

## II.    THE REPLACEMENT TRUSTEE DOES NOT IDENTIFY ANY PLAUSIBLE ALLEGATIONS OF FACT THAT WOULD ESTABLISH CAUSATION

The Replacement Trustee's conclusory allegation that he would have submitted admissible evidence that would prove Lyondell's insolvency is no more than wishful thinking. *See* FAC ¶¶ 110-112. To plead but-for causation in this case,[12] the Replacement Trustee would have had to allege *how* he would have successfully executed a Lyondell standalone insolvency strategy – not merely to state that he would "easily" have done so.[13]

---

[12] The Replacement Trustee suggests that he need only "demonstrate 'that a reasonable factfinder *could*' resolve the case in [his] favor."  Opp. at 23 n.69 (emphasis added).  But a "plaintiff must show that but for the defendant's negligence, he or she *would* have prevailed…."  *Prout v. Vladeck*, 371 F. Supp. 3d 150, 156 (S.D.N.Y. 2019) (emphasis added) (citation omitted).

[13] Without the need for discovery, the Replacement Trustee could have commissioned and presented an expert declaration that would explain how he would have established Lyondell's

Nor has the Replacement Trustee pointed to any non-conclusory allegations that would have defeated Access's affirmative defense, which Access in fact litigated through trial and on appeal.   His conclusory allegation that he would have defeated Access's affirmative defense, *see* FAC ¶ 113, deserves no credit.

## III.   THE REPLACEMENT TRUSTEE DOES NOT IDENTIFY ANY FACTS OR LAW TO SUPPORT HIS SECOND CLAIM

In the absence of any attorney-client relationship between Brown Rudnick and the TAB that could support a malpractice claim, *see* Br. at 22-24, the Replacement Trustee resorts to speculative theories – supported by ***no case law*** – about a fiduciary duty allegedly owed to the TAB.   He offers no legal basis for conjuring an attorney-client relationship where there was none.[14]   The Replacement Trustee's second claim must thus be dismissed as a matter of law.

## IV.   THE REPLACEMENT TRUSTEE BELATEDLY ATTEMPTS TO PLEAD IN HIS BRIEFING THE ELEMENTS OF CAUSATION AND DAMAGES TO SUPPORT HIS THIRD CLAIM THAT HE OMITTED FROM HIS COMPLAINT

With respect to the only element of his fiduciary duty claim that the Replacement Trustee in fact ***did*** plead, his allegation of breach is insufficient to survive a motion to dismiss.   As a matter of law, Brown Rudnick had no obligation to provide the client file at its own expense, *see* Br. at 23.   The Replacement Trustee's fallback position is now that Brown Rudnick's alleged breach was due to its refusal to produce "any portion" of the client file.   Opp. at 25, citing to *Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn L.L.P.*, 91 N.Y.2d 30, 36-37 (1997). Setting aside the fact that Brown Rudnick did in fact produce substantial documentation at the TAB's request, the case law the Replacement Trustee cites does not require that a "portion" of

---

standalone insolvency.   *See, e.g.*, *Courtney v. McDonald*, No. 157696/2017, Dkt. Nos. 2, 11 (Sup. Ct. N.Y. County Aug. 28, 2017).   That he did not do so is telling.

[14] Mystifyingly, in light of the Engagement Letter's clear language, *see* Clark Decl., Ex. 7, Ex. A, the Replacement Trustee attempts to label Brown Rudnick's argument that it owed no duty to the TAB, Br. at 21 n.18, as "baseless," Opp. at 24.

the client file be produced free of charge, *see Sage Realty*, 91 N.Y. 3d at 38.  And in any event, the FAC does not ***allege***, and the Replacement Trustee's correspondence requesting production of documents does not show, *see* Dkt. Nos. 27-18 to 22, that he ever requested that Brown Rudnick produce only those portions of the client file that would cost "next to nothing," Opp. at 25, for Brown Rudnick to assemble.  It cannot be a breach of duty to for a law firm to fail to fulfill a request that its former client never made.

The Replacement Trustee belatedly tries to conjure the two missing elements of his fiduciary duty claim for the first time in briefing.  But the paragraph of the FAC on which he ostensibly relies says nothing about how he has been damaged, let alone that producing the file would have "sav[ed] the Trust valuable time and resources in prosecuting this action."[15]  Opp. at 25 (citing to FAC ¶ 125).  Nor need the Court credit the Replacement Trustee's last-ditch contention that "in any event, even nominal damages are sufficient."  *Id*.  The issue is that the FAC does not plead the ***fact*** of damages.  "A complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations and claims should not be considered in resolving the motion."  *Southwick Clothing*, 2004 WL 2914093, at *6.

## V.    CONCLUSION

For the reasons set forth above, the Replacement Trustee's claims should be dismissed in their entirety with prejudice, and this Court should grant such other relief as it deems appropriate.

---

[15] The cited paragraph alleges only that Mr. Weisfelner – in his capacity as the original Trustee, not as counsel to the Trust – did not produce certain documents.  FAC ¶¶ 124-125.

Dated: March 18, 2020                              Respectfully submitted,

                                                   LATHAM & WATKINS LLP


                                                   By:  s/Christopher J. Clark
                                                        Christopher J. Clark
                                                        Nicholas Lloyd McQuaid
                                                        Virginia F. Tent
                                                        Rakim E. Johnson
                                                        Sindhu Boddu
                                                        885 Third Avenue
                                                        New York, New York 10022-4834
                                                        Telephone:  (212) 906-1200
                                                        Facsimile:  (212) 751-4864
                                                        chris.clark@lw.com
                                                        nicholas.mcquaid@lw.com
                                                        virginia.tent@lw.com
                                                        rakim.johnson@lw.com
                                                        sindhu.boddu@lw.com

                                                        *Attorneys for Defendant*
                                                        *Brown Rudnick LLP*