**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARK E. HOLLIDAY, as Trustee of the LB Litigation Trust, | |
| Plaintiff, | No. 1:19 Civ. 10925 (PAE) (SN) |
| v. | |
| BROWN RUDNICK LLP, | |
| Defendant. | |
| BROWN RUDNICK LLP, | |
| Counterclaim Plaintiff, | |
| v. | |
| MARK E. HOLLIDAY, as Trustee of the LB Litigation Trust, and Paul N. Silverstein, | |
| Counterclaim Defendants. | |

**ANSWER AND COUNTERCLAIMS OF DEFENDANT BROWN RUDNICK LLP**

Defendant and Counterclaim Plaintiff Brown Rudnick LLP ("Brown Rudnick"), by and through its undersigned counsel, respectfully submits this Answer and Counterclaims to the First Amended Complaint ("Complaint"), dated February 5, 2020, filed by Plaintiff and Counterclaim Defendant Mark E. Holliday ("Holliday").

## **ANSWER**

In response to the specific allegations contained in the Complaint, Brown Rudnick states as follows:

1.      Aver that paragraph 1 sets forth legal conclusions to which no answer is required. To the extent paragraph 1 contains factual content all such allegations are denied, except admit the allegation in the first sentence that a Brown Rudnick lawyer used the quoted phrase, albeit taken out of context as used in paragraph 1.

2.      Admit that debtors in a case asserting, among other things, a preference claim are presumed insolvent (albeit only when the relevant transfer was made within 90 days of the debtor's bankruptcy filing), and that Access argued, with respect to such claim, that Lyondell was solvent because it had a value of $12 to $13 billion with only $9 billion in debt to rebut the presumption. Aver that the remainder of allegations in paragraph 2 set forth legal conclusions to which no answer is required.

3.      Deny the allegations in paragraph 3.

4.      Deny the allegations in paragraph 4.

5.      Deny the allegations in paragraph 5, except admit that the Bankruptcy Court opinion included the quoted statement.

6.      Aver that paragraph 6 sets forth legal conclusions to which no answer is required. Admit that the Bankruptcy Court opinion includes the quoted phrase, and that a Brown Rudnick

lawyer used the quoted phrase, albeit taken out of context as used in paragraph 6. To the extent paragraph 6 contains other factual content all such allegations are denied.

7.      Aver that paragraph 7 contains Plaintiff's statement of the case and legal conclusions to which no response is required. To the extent paragraph 7 contains factual content all such allegations are denied.

8.      Aver that paragraph 8 contains Plaintiff's statement of the case and legal conclusions to which no response is required. To the extent paragraph 8 contains factual content, all such allegations are denied.

9.      Aver that paragraph 9 contains Plaintiff's statement of the case and legal conclusions to which no response is required. To the extent paragraph 9 contains factual content, all such allegations are denied.

10.     Aver that paragraph 10 contains Plaintiff's statement of the case and legal conclusions to which no response is required, except admit that the Bankruptcy Court's opinion contained the statement that "LBI's performance dropped off steeply in November and December 2008" in its opinion. Deny that the Bankruptcy Court rejected an attempt by Brown Rudnick to use a "retrojection" analysis.

11.     Aver that paragraph 11 contains Plaintiff's statement of the case and legal conclusions to which no response is required, except admit that the Bankruptcy Court held that other elements of the Preference Claim other than insolvency were satisfied. To the extent paragraph 11 contains factual content, all such allegations are denied.

12.     Aver that paragraph 12 sets forth legal conclusions to which no answer is required. To the extent paragraph 12 contains factual content all such allegations are denied.

13.     Deny the allegations in paragraph 13, except admit that Brown Rudnick, which at all times properly discharged its professional duties, at no point told the members of the Trust Advisory Board that it had "botched" the Preference Claim.

14.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14.

15.     Deny the allegations in paragraph 15, except admit that Edward Weisfelner was trustee of the Trust during Brown Rudnick's prosecution of the Preference Claim, that Weisfelner sent a notice to the Trust's beneficiaries stating that he "does not believe there are viable claims or causes of action" against Brown Rudnick, that Weisfelner was removed and replaced as Trustee, and that Weisfelner claimed that he had the right to dispute his removal as Trustee.

16.     Aver that paragraph 16 sets forth legal conclusions to which no answer is required, except admit that Brown Rudnick has not turned over the Trust's client file to Holliday, and deny knowledge or information sufficient to form a belief as to the truth of the allegation that the allegations in the First Amended Complaint are being made without access to the Trust's client file.

17.     This paragraph sets forth Plaintiff's jurisdictional allegations that present legal conclusions and questions of law to be determined solely by the Court, to which no answer is required.  To the extent that a response is required, Defendant avers that the Court has jurisdiction under 28 U.S.C. § 1332(b).

18.     Upon information and belief, admitted.

19.     Deny the allegations in paragraph 19 to the extent they purport to be an exhaustive list of all states where Brown Rudnick's partners are citizens.  Admit that no Brown Rudnick partner is a citizen of Oregon.

20.     This paragraph sets forth Plaintiff's venue allegations that present legal conclusions and questions of law to be determined solely by the Court, to which no answer is required.  To the extent that a response is required, Defendant avers that the proper venue for Plaintiff's claim is determined under 28 U.S.C. § 1391.

21.     Deny knowledge or information sufficient to form a belief as to the truth of the allegation that the Trust originally initiated an arbitration against Brown Rudnick because of the engagement letter between Brown Rudnick and Weisfelner, or the allegation that the Trust commenced this action in accordance with Brown Rudnick's position on jurisdiction and waiver of any right to arbitration.  Admit that Brown Rudnick stated in its arbitration answer that the arbitration clause under the heading "Fee Disputes" in the engagement letter did not apply to malpractice claims, and that Brown Rudnick reserved its right to contend that any arbitrator would lack jurisdiction of the case.

22.     Admit.

23.     Deny the allegations in paragraph 23, except admit that Holliday is the current Trustee of the Trust and that Weisfelner is a Brown Rudnick partner who served as Trustee until May 3, 2019, after which the Trust Advisory Board, upon information and belief, proposed to appoint Holliday as successor Trustee on May 3, 2019.

24.     Admit.

25.     Admit.

26.     Admit, except refer to the Access Revolver documentation for its terms.

27.     Aver that paragraph 27 sets forth legal conclusions to which no answer is required, except admit that that Lyondell drew $300 million from the Access Revolver on October 15, 2008, that Lyondell repaid the draw in equal installments on October 16, 17, and 20, 2008, and that these

repayments were within 90 days of the Petition Date and were the basis of the Preference Claim. To the extent paragraph 27 contains additional factual content, all such allegations are denied.

28.     Admit.

29.     Deny the allegations in paragraph 29, except admit that the Trust was created under the Chapter 11 plan of reorganization of the LBI entities, which became effective on April 30, 2010, and that under the Plan, certain claims, including the Preference Claim, were assigned to the Trust.

30.     Admit.

31.     Admit, except deny that the Preference Claim, along with several other remaining causes of action, was tried in "mid-2016."

32.     Deny knowledge or information sufficient to form a belief as to the truth of the allegation that the elements of a preference claim under 11 U.S.C. § 547(b) are well-known to all competent bankruptcy lawyers.  Refer to 11 U.S.C. § 547(b) for its terms and the elements of such a claim.

33.     Deny the allegations in paragraph 33, except admit that Brown Rudnick as counsel to the plaintiff in the Preference Claim was responsible for responding to any affirmative defense to the Preference Claim raised by Access.

34.     Deny the allegations in paragraph 34.

35.     Deny the allegations in paragraph 35, except admit that Brown Rudnick alleged that Lyondell made the preferential transfers to Access, and that the Bankruptcy Court stated in its opinion that "The Trustee chose not to present specific evidence of Lyondell's stand-alone insolvency at trial."

36.     Deny the allegations in paragraph 36.  Aver that Maxwell's expert reports and testimony speak for themselves.  Aver that the fourth and fifth sentences of paragraph 36 set forth legal conclusions to which no response is required.

37.     Deny the allegations in paragraph 37, except admit that Brown Rudnick used Maxwell's opinions on LBI's balance sheet to argue that Lyondell was insolvent if LBI was insolvent.

38.     Deny the allegations in paragraph 38, and aver that the first sentence of paragraph 38 sets forth legal conclusions to which no response is required.

39.     Aver that paragraph 39 sets forth legal conclusions to which no response is required.  To the extent paragraph 39 contains factual content all such allegations are denied.

40.     Deny the allegations in paragraph 40, except admit that Lyondell made the $300 million in transfers to Access within 90 days prior to Lyondell's bankruptcy filing.  Refer to 11 U.S.C. § 547(f) for its terms.

41.     Deny the allegations in paragraph 41, except admit that Brown Rudnick, on behalf of the Trust, moved for summary judgment on the Preference Claim and that the Access Defendants cross-moved for summary judgment on the Preference Claim.

42.     Deny the allegations in paragraph 42, except admit that Access contended that Lyondell's stand-alone assets were worth approximately $10.9 to $15.6 billion, that Access did not retain an expert to value LBI or Lyondell in October 2008, and that Access presented multiple non-expert valuations of Lyondell on a stand-alone basis.

43.     Refer to Access's summary judgment papers and submissions in the Preference Claim litigation for their contentions, arguments, and terms.

44. Deny the allegations in paragraph 44, except admit that Access argued that the valuations showed Lyondell's solvency because, according to Access, Lyondell's direct liabilities were around $9.1 billion.

45. Admit as to the factual allegations in paragraph 45, except deny footnote 10's allegations that the Intercompany Note was not part of LBI's overall consolidated cash management approach, that the Intercompany Note was a material piece of evidence, and that Brown Rudnick represented the Intercompany Note as "immaterial" to the Bankruptcy Court. Otherwise, aver that paragraph 45 sets forth legal conclusions to which no response is required.

46. Deny the allegations in paragraph 46.

47. Deny the allegations in paragraph 47, and aver that they contain legal conclusions, to which no response is required.

48. Deny the allegations in paragraph 48.

49. Deny the allegations in paragraph 49, except admit that Access referenced the Intercompany Note to support its affirmative defense

50. Aver that paragraph 50 sets forth legal conclusions to which no response is required. To the extent paragraph 50 contains factual content all such allegations are denied.

51. Aver that paragraph 51 sets forth legal conclusions to which no response is required. To the extent paragraph 51 contains factual content, all such allegations are denied.

52. Aver that paragraph 52 sets forth legal conclusions to which no response is required. Admit that the Bankruptcy Court found that Access had rebutted the presumption of insolvency. Deny knowledge or information sufficient to form a belief as to the truth of the allegation that the Bankruptcy Court did not have evidence of the Intercompany Note and related intercompany liabilities when considering whether the presumption of insolvency applied.

53.     Deny the allegations in paragraph 53, except admit that a Brown Rudnick lawyer wrote the quoted phrase, albeit in a different context than alleged.

54.     Aver that paragraph 54 sets forth legal conclusions to which no response is required.  To the extent paragraph 54 contains factual content all such allegations are denied.

55.     Aver that paragraph 55 sets forth legal conclusions to which no response is required.  To the extent paragraph 55 contains factual content, all such allegations are denied.

56.     Deny the allegations in paragraph 56, except admit that Brown Rudnick presented evidence at trial concerning a valuation of LBI.

57.     Deny the allegations in paragraph 57, except admit that the Bankruptcy Court's opinion contains the quoted statement.

58.     Aver that paragraph 58 sets forth legal conclusions to which no response is required.  To the extent paragraph 58 contains factual content, all such allegations are denied.

59.     Aver that paragraph 59 sets forth legal conclusions to which no response is required.  To the extent paragraph 59 contains factual content, all such allegations are denied.

60.     Deny the allegations in paragraph 60.

61.     Deny the allegations in paragraph 61, except admit that the Bankruptcy Court sustained an objection on the basis that Maxwell's quoted testimony was not contained in any of his expert reports.

62.     Deny the allegations in paragraph 62, except admit that the Bankruptcy Court blocked Maxwell from testifying on Lyondell's standalone insolvency and that Brown Rudnick's post-trial brief contained the quoted statement.

63.     Deny the allegations in paragraph 63.

64.     Deny the allegations in paragraph 64.

65.    Deny the allegations in paragraph 65, except admit that a copy of the Intercompany Note was not in the record, and admit that Brown Rudnick stated in its post-trial brief the quoted statement.

66.    Deny the allegations in paragraph 66, and aver that the third sentence contains legal conclusions to which no response is required.

67.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67.   Deny the allegation that Brown Rudnick previously represented to the Bankruptcy Court that the note was immaterial and that the note was just part of LBI's overall consolidated cash management approach.   Admit that the exchange quoted in paragraph 67 is presented in the closing argument transcript.

68.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67, except admit that the exchange quoted in paragraph 68 is presented in the closing argument transcript.

69.    Deny the allegations in paragraph 69, except admit that Brown Rudnick submitted a letter to the Bankruptcy Court following closing arguments.

70.    Deny the allegations in paragraph 70.

71.    Deny the allegations in paragraph 71, except admit that the quoted statement appears in Access's response to Brown Rudnick's post-trial letter.

72.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 72.

73.    Deny the allegations in paragraph 73.

74.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 74.

75.     Aver that paragraph 75 sets forth Plaintiff's statement of the case and legal conclusions to which no response is required.

76.     Admit.

77.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 77, except admit that Brown Rudnick has not produced the Trust's client file to the Trust.

78.     Deny the allegations in paragraph 78.

79.     Deny the allegations in paragraph 79, except admit that the quoted statements appear in correspondence between Brown Rudnick lawyers and Kellogg Hansen, albeit taken out of context.

80.     Deny the allegations in paragraph 80, except admit that the phrase "too little, too late" appears in correspondence between Brown Rudnick and Kellogg Hansen, albeit taken out of context.

81.     Deny the allegations in paragraph 81, except admit that Brown Rudnick has not produced the client file to the Trust.

82.     Deny the allegations in paragraph 82.

83.     Aver that paragraph 83 sets forth legal conclusions to which no response is required.

84.     Aver that paragraph 84 sets forth legal conclusions to which no response is required.  To the extent paragraph 84 contains factual content, all such allegations are denied.

85.     Deny knowledge or information sufficient to form a basis as to the truth of the allegations in the first and second sentences of paragraph 85.  Refer to Maxwell's trial testimony for its contents.

86.     Deny the allegations in paragraph 86, except admit that Access stated the quoted statements in its briefing.

87.     Deny the allegations in paragraph 87, but admit that the Bankruptcy Court opinion contained the quoted statement.

88.     Deny the allegations in paragraph 88, except admit that Maxwell stated in his expert report that the December 2008 projections were "developed during the 2nd half of 2008 and available in October."

89.     Aver that paragraph 89 sets forth legal conclusions to which no response is required.  Deny the allegation that Brown Rudnick took the actions described in paragraph 89.

90.     Deny the allegations in paragraph 90, except admit that the Bankruptcy Court's opinion contains the statement quoted therein.

91.     Deny the allegations in paragraph 91, except admit that the Bankruptcy Court did not find that Lyondell was insolvent when it made the transfers to Access.

92.     Deny the allegations in paragraph 92.

93.     Deny the allegations in paragraph 93.

94.     Deny the allegations in paragraph 94.

95.     Aver that paragraph 95 sets forth Plaintiff's statement of the case and legal conclusions to which no response is required.  To the extent paragraph 95 contains factual content all such allegations are denied.

96.     Deny the allegations in paragraph 96, except admit that Brown Rudnick has taken the position that the Trust could have settled the claims against Access and other defendants, and aver that Brown Rudnick so advised the Trust and its Board  prior to the trial of the Preference Claim.

97.     Deny the allegations in paragraph 97, except admit that Brown Rudnick was engaged in settlement discussions with the defendants prior to trial, during the trial, and after the trial, and that the Trustee and Trust Advisory Board were advised by Brown Rudnick, prior to trial, that the Preference Claim could be settled within the range of the recently settled claims against the former Lyondell officers and directors, and that the Trust Advisory Board was at all relevant times fully aware of the status of such settlement negotiations with Access and the other remaining defendants, and impeded Brown Rudnick from being able to secure a settlement of the Preference Claim prior to, during, or after the trial of the Preference Claim.

98.     Deny the allegations in paragraph 98.

99.     Deny the allegations in paragraph 99 and aver that they contain legal conclusions to which no response is required, and further aver that since Weisfelner's partners at no time committed malpractice, and the Trust Advisory Board was aware at all relevant times of, and endorsed and approved the tactical decisions being taken by Brown Rudnick, there was no "malpractice" to "disclose" to the Trust Advisory Board.  Brown Rudnick also refers the Court to its decision finding that there was no attorney-client relationship between the TAB and Brown Rudnick.  *See* Dkt. 33 at 27.

100.    Deny the allegations in paragraph 100 and aver that they contain legal conclusions to which no response is required.

101.    Deny the allegations in paragraph 101 and aver that they contain legal conclusions to which no response is required.  Brown Rudnick also refers the Court to its decision finding that there was no attorney-client relationship between the TAB and Brown Rudnick.  *See* Dkt. 33 at 27.

102.    Deny the allegations in paragraph 102 to the extent they imply that Brown Rudnick did not provide honest and prudent advice and to the extent they refer to "claims" other than the Preference Claim.  Aver that the Trust Advisory Board was kept fully informed of the status of any settlement negotiations with Access prior to, during, and after trial of the Preference Claim, and that the Trust Advisory Board impeded Brown Rudnick's ability to secure a settlement of the Preference Claim for "substantial value."

103.    Admit.

104.    Deny the allegations in paragraph 104, except admit that the District Court's opinion contained the quoted statement.

105.    Deny the allegations in paragraph 105, except admit that the District Court's opinion contained the quoted statement.

106.    Deny the allegations in paragraph 106, except admit that the District Court's opinion contained the quoted phrases.

107.    Deny the allegations in paragraph 107, except admit that the quoted statement appears in Brown Rudnick's appellate briefing.

108.    Deny the allegations in paragraph 108, except admit that the District Court's opinion contained the quoted statements.

109.    Deny the allegations in paragraph 109, except admit that the District Court's opinion contained the quoted phrases.

110.    Deny the allegations in paragraph 110.

111.    Deny the allegations in paragraph 111, except admit the allegation in the last sentence that Brown Rudnick lawyers used the quoted language, albeit in a different context than alleged.

112.     Deny the allegations in paragraph 112.

113.     Deny the allegations in paragraph 113, except admit the allegations in footnote 24 that Access moved for summary judgment on its affirmative defense, that the Bankruptcy Court denied Access's motion for summary judgment, and that the Bankruptcy Court ultimately did not address Access's affirmative defense.

114.     Refer to 11 U.S.C. § 547(c)(2) for its terms and the elements of such a defense.

115.     Deny the allegations in paragraph 115, except admit that Access's affirmative defense was that the Access Revolver was "ordinary" for both Lyondell and Access.

116.     Deny the allegations in paragraph 116.

117.     Deny the allegations in paragraph 117.

118.     Deny the allegations in paragraph 118, except admit that Access received all of its money back prior to Lyondell's bankruptcy filing.

119.     Admit the allegation in paragraph 119 that the quoted statement appeared in Brown Rudnick's post-trial brief.  Aver that footnote 25 sets forth a legal conclusion to which no response is required.

120.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 120, except admit that Brown Rudnick is aware of a communication addressed to the Trust Advisory Board that contains the quoted text.

121.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 121, except admit that the Trust Advisory Board removed and replaced Weisfelner as Trustee.

122.    Deny the allegations in paragraph 122, except admit that Holliday requested that Brown Rudnick produce the Trust's client file, and Brown Rudnick declined to do so without compensation as required by New York law.

123.    Deny the allegations in paragraph 123, except admit that Brown Rudnick has not produced documents to Holliday.

124.    Admit the allegations in paragraph 124 and footnote 27, except deny information or knowledge sufficient to know what Plaintiff alleges on information and belief.

125.    Deny the allegations in paragraph 125, except admit the allegations that Weisfelner has previously asserted that the claims against his law firm lack merit and that he has not produced documents to Holliday.

126.    Deny the allegations in paragraph 126.

127.    Paragraph 127 contains Plaintiff's demand for a jury trial.

128.    Defendant repeats and realleges its responses to paragraphs 1 to 126 with the same force and effect as if set forth in full herein.

129.    Aver that paragraph 129 sets forth a legal conclusion to which no response is required.

130.    Aver that the first sentence of paragraph 130 sets forth legal conclusions to which no response is required.  Deny the allegation in the second sentence of paragraph 130.

131.    Deny the allegations in paragraph 131.

132.    Deny the allegations in paragraph 132.

133.    Deny the allegations in paragraph 133.

134.    Deny the allegations in paragraph 134.

135.    Deny the allegations in paragraph 135.

136.     Deny the allegations in paragraph 136.

137.     Deny the allegations in paragraph 137.

138.     The allegations in paragraph 138 have been rendered moot by the Court's dismissal of Plaintiff's claim.

139.     The allegations in paragraph 139 have been rendered moot by the Court's dismissal of Plaintiff's claim.

140.     The allegations in paragraph 140 have been rendered moot by the Court's dismissal of Plaintiff's claim.

141.     The allegations in paragraph 141 have been rendered moot by the Court's dismissal of Plaintiff's claim.

142.     The allegations in paragraph 142 have been rendered moot by the Court's dismissal of Plaintiff's claim.

143.     The allegations in paragraph 143 have been rendered moot by the Court's dismissal of Plaintiff's claim.

144.     The allegations in paragraph 144 have been rendered moot by the Court's dismissal of Plaintiff's claim.

145.     The allegations in paragraph 145 have been rendered moot by the Court's dismissal of Plaintiff's claim.

146.     The allegations in paragraph 146 have been rendered moot by the Court's dismissal of Plaintiff's claim.

147.     The allegations in paragraph 147 have been rendered moot by the Court's dismissal of Plaintiff's claim.

148.    The allegations in paragraph 148 have been rendered moot by the Court's dismissal of Plaintiff's claim.

## COUNTERCLAIMS

Defendant and Counterclaim Plaintiff Brown Rudnick LLP ("Brown Rudnick") asserts the following Counterclaims against Plaintiff and Counterclaim Defendant Mark E. Holliday ("Holliday" or "Replacement Trustee") and Counterclaim Defendant Paul N. Silverstein ("Silverstein"), and alleges upon knowledge as to itself and its own acts and upon information and belief as to all other matters:

## PRELIMINARY STATEMENT

149.    Brown Rudnick represented the LB Litigation Trust (the "Trust") for years in the successful prosecution and settlement negotiation of numerous disputes arising out of the chapter 11 bankruptcy of debtors Lyondell Chemical Company ("Lyondell") and LyondellBasell Industries AF S.C.A. ("LBI").  As a result of Brown Rudnick's zealous advocacy, the beneficiaries of the Trust received more than $150 million in value secured by settlements obtained by Brown Rudnick, on top of the more than $450 million dollars that Brown Rudnick recovered on behalf of the debtors' general unsecured creditors.

150.    After the presiding bankruptcy judge who had handled the LBI bankruptcy proceeding from the outset and had adjudicated all issues in the LBI proceedings, including the litigation pursued by Brown Rudnick and confirmation of the LBI Plan of Reorganization, retired, the case was reassigned to Judge Martin Glenn, who set the case for trial in late 2016 with respect to any remaining non-settling defendants.

151.    In or about August 2016, prior to trial, Brown Rudnick was able to reach a settlement with all the former Lyondell directors and officers, leaving only what were referred to as the "Access Defendants" as the remaining, non-settling defendants out of numerous initial defendants in such action.

152.    The remaining claims against the Access Defendants proceeded to trial before Judge Glenn in late 2016, and the Bankruptcy Court, after a multi-day bench trial, ultimately ruled against the Trust on a preference claim (the "Preference Claim") that Brown Rudnick bought on behalf of the Trust against the Access Defendants.  Notwithstanding Brown Rudnick's diligence in keeping the Trust Advisory Board ("TAB") apprised of ongoing mediation efforts to settle with the Access Defendants prior to, during and after trial, and to persuade the TAB to settle the remaining claims, particularly the Preference Claim, within a settlement range that Brown Rudnick believed was achievable, the TAB chose to "roll the dice" and refused to authorize the Trustee, Mr. Weisfelner, to settle.

153.    At all relevant times, the TAB was well aware of the risks of not settling with the Access Defendants.  Indeed, the TAB had been involved throughout the history of the case on all decisions that were made with respect to prosecution of the Preference Claim, including expert-related decisions.  Certain of the TAB members, including Counterclaim Defendant Silverstein, who had been appointed to the TAB by a Trust beneficiary, advanced an aggressive approach on settlement throughout the history of the case, which impeded the ability of Brown Rudnick to secure a reasonable settlement from the Access Defendants.  After the Bankruptcy Court issued its ruling, neither Counterclaim Defendant Silverstein nor the other TAB members criticized Brown Rudnick's performance at trial, although Counterclaim Defendant Silverstein expressed concern about his own personal exposure as a result of the Bankruptcy Court's ruling.

154.    Indeed, at no time until a beneficiary of the Trust sought to purchase the Trust's claim against the Trust's professionals did any of the TAB members communicate to Brown Rudnick any question regarding the excellent overall performance by Brown Rudnick, which delivered hundreds of millions of dollars in recoveries to unsecured creditors.

155.     No doubt the TAB, after the fact, regrets its decision not to authorize the Trustee (Mr. Weisfelner) and  Brown Rudnick to settle with the Access Defendants for a substantial amount of value during the window when a settlement was achievable, prior to an adverse ruling from the Bankruptcy Court.  The Replacement Trustee's facially-flawed and manufactured claim for legal malpractice is nothing more than a thinly veiled shakedown of Brown Rudnick and its insurers predicated on the TAB's failure to follow the Trustee's and Brown Rudnick's recommendations, and an effort to avoid the consequences of the TAB's own careful oversight of Brown Rudnick's representation, and participation in and adoption of all relevant decisions made by the Trust with respect to the prosecution of the Preference Claim – and significantly, the Trustee's inability, due to the direction and oversight of the TAB, to achieve a feasible settlement of the Preference Claim and the TAB's decision to chase a home run at trial instead.

## JURISDICTION AND VENUE

156.     Upon information and belief, Holliday is a citizen of Oregon.

157.     Upon information and belief, Silverstein is a citizen of New York.

158.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 and Fed. R. Civ. P. 13, as Brown Rudnick's causes of action against the Trustee and Mr. Silverstein are related to the Trustee's claims in this action and form a part of the same case or controversy.

159.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES

160.     Defendant and Counterclaim Plaintiff Brown Rudnick is a law firm with an office in, among other places, New York, New York.

161.    Plaintiff and Counterclaim Defendant Holliday is the current Trustee of the Trust, and has been since May 3, 2019, when the Trust Advisory Board appointed Holliday as Replacement Trustee.

162.    Counterclaim Defendant Silverstein is a member of the Trust Advisory Board, and has been since 2010.

## FACTS

163.    In January and April 2009, respectively, Lyondell and LBI filed for bankruptcy. In April 2010, pursuant to the confirmed plan of reorganization, the Trust was created by the LB Litigation Trust Agreement (the "Trust Agreement") to prosecute claims assigned to it by the former chapter 11 debtors in possession, including LBI and Lyondell.  *See* Ex. A, Trust Agreement.

164.    When the Bankruptcy Court for the Southern District of New York confirmed the debtors' plan of reorganization in April 2010, Edward S. Weisfelner, a senior partner at Brown Rudnick, was appointed as the original Trustee of the Trust.  Mr. Weisfelner served as Trustee until he was succeeded by Plaintiff Mark Holliday on May 3, 2019.  The Trust operated such that units in the Trust could be bought and sold by various creditors.

165.    The Trust engaged Brown Rudnick to pursue preferential transfer and fraudulent transfer claims on behalf of the Trust pursuant to an engagement letter dated as of April 30, 2010. *See* Ex. B, Engagement Letter.

166.    Pursuant to the Brown Rudnick engagement letter, the parties' agreement to arbitrate was limited to disputes between the parties regarding the fees charged by Brown Rudnick. *See* Ex. B.

167.    Brown Rudnick, which had already recovered approximately $450 million for the unsecured creditors, successfully prosecuted dozens of claims against third parties and recovered an additional approximately $150 million for the Trust.[1]

168.    Shortly before trial on the remaining claims, including the $300 million Preference Claim that forms the basis of this dispute, Brown Rudnick advised the TAB, which included leading bankruptcy attorneys, that the Preference Claim could likely be settled for a significant sum, but well below its $300 million face value.

169.    Mr. Weisfelner and Brown Rudnick made sure to have at least one TAB member attend all mediation sessions, which already had resulted in a significant settlement with all the former directors and officers of Lyondell and their carriers in or about August 2016, leaving only the Access Defendants as the remaining non-settling defendants.  One TAB member attended all group mediation sessions.

170.    Further, Brown Rudnick at the instruction of Mr. Weisfelner reported to the TAB on the status of settlement efforts, and individual members of the TAB contacted Brown Rudnick directly to stay informed on the status of ongoing settlement efforts.

171.    Moreover, a small number of Trust beneficiaries, including Caspian Capital LP ("Caspian") and Columbus Hill Capital Management, L.P. ("Columbus Hill"), also stayed in regular direct contact with Brown Rudnick, and expressed their views on what range of settlement with the Access Defendants would be acceptable to them.  Certain of the TAB members, including Counterclaim Defendant Silverstein, a lawyer and "seasoned expert in the bankruptcy/financial

---

[1] Prior to the confirmation of the plan of reorganization, Brown Rudnick secured approximately $450 million in value for general unsecured creditors.

restructuring and distressed investing space,"[2] acted at the behest of creditor(s) who had engineered their respective appointments to the TAB, and they conducted themselves while on the TAB to advance the interests and settlement expectations of their respective "client(s)" who had put them on the TAB.  Upon information and belief, certain of the Trust beneficiaries actively traded in Trust units, and certain beneficiaries such as Caspian and Columbus Hill purchased and sold Trust units to hedge their investments.  Upon further information and belief, Caspian, Columbus Hill, and others encouraged the TAB to pursue this suit against Brown Rudnick to earn additional profits as well as guard against loss on their initial investments.

172.  Brown Rudnick attempted to navigate these varying pressures, and updated the TAB on all material developments (including updating certain TAB members in real time of any developments).  Because Mr. Weisfelner as Trustee left it to the TAB to sign off on all ultimate settlement decisions, Brown Rudnick was careful to keep the TAB fully apprised of all the risks inherent in the case, including that a new judge had recently taken over the case.  Judge Glenn, unlike the now-retired Judge Gerber, did not have the same familiarity with all aspects of the Lyondell bankruptcy proceedings, the issues in the case, and the prior case dynamics.

173.  Brown Rudnick indicated to the TAB, prior to trial, what it thought was an achievable settlement with the Access Defendants, based on ongoing settlement efforts via the mediator who had successfully mediated the recent, extremely significant settlement with the former Lyondell officers and directors, who, it had been alleged in the litigation, had breached their fiduciary duties in engineering and approving the Access Defendants' acquisition of Lyondell, and engaging in alleged misconduct in misleading the Access Defendants to agree to

---

[2] *See* profile of Paul N. Silverstein, available at https://www.huntonak.com/en/people/paul-silverstein.html (last visited August 17, 2020).

acquire Lyondell at an allegedly inflated price.  This was a critically important development, and provided a window in which a significant settlement pre-trial with the Access Defendants was potentially achievable.  Specifically, Brown Rudnick advised that a settlement with the Access Defendants prior to trial within the range of the recently settled claims against the former Lyondell officers and directors was possible.  However, despite understanding the acknowledged risks, the Trust chose to forego this potential significant settlement recovery, instead gambling on the opportunity for an even larger recovery at trial.  Further, TAB members, including Counterclaim Defendant Silverstein, upon information and belief, rejected the possibility for Brown Rudnick to settle in an achievable range based on their desires, or instructions from their clients, to achieve an unrealistic recovery for their clients.

174.    In pursuit of the Preference Claim at trial, Brown Rudnick sought to establish the insolvency of LBI or Lyondell as of October 2008 through two primary methods.  First, Brown Rudnick relied on expert testimony to establish LBI's consolidated insolvency.  Alternatively, Brown Rudnick presented evidence showing the insolvency of Lyondell itself, including its tangle of financial interconnections with affiliates.

175.    Based on the judge's trial rulings and demeanor towards its expert, among other factors, Brown Rudnick chose to emphasize Lyondell's insolvency in its closing arguments and post-trial briefing.  Nevertheless, the Preference Claim failed following trial and an appeal to the district court.

176.    More than two years after the resolution of that appeal, the Trust now seeks to re-litigate the Trust's trial strategy – out of context and ignoring key facts, including the substantial trial evidence supporting an affirmative defense to the preference claim – at the behest of one or

more of the same Trust beneficiaries who, prior to trial, had pressed Brown Rudnick not to settle the Preference Claim in a range that was achievable at the time.

177.    Nevertheless, Mr. Holliday's reckless decision as Replacement Trustee to bring a meritless malpractice claim in no way alters the fact that Brown Rudnick's strategic and tactical decisions in prosecuting the Preference Claim were unquestionably reasonable.

178.    Moreover, despite having been kept actively advised on all material litigation matters, including strategic decisions and settlement issues, at no time did the TAB ever criticize Brown Rudnick's strategic decisions or its performance prior to or during trial.

### A.    The Preference Claim

179.    The adversary proceeding that gives rise to Mr. Holliday's complaint, *see Weisfelner v. Blavatnik (In re Lyondell* Chemical *Co.)*, 567 B.R. 55 (Bankr. S.D.N.Y. 2017), was one of the many proceedings in which Brown Rudnick prosecuted claims against third parties on behalf of the Trust.

180.    The initial *Blavatnik* adversary complaint included twenty-one claims, including the $300 million Preference Claim related to Lyondell's October 2008 accelerated repayment of its $300 million draw on its revolving line of credit with its indirect owner Access Industries Holdings ("Access").

181.    To establish the Preference Claim, the Trust had to show that $300 million was transferred to Access on account of an antecedent debt, at a time when the debtor was insolvent, and that the transfer allowed Access to receive more than it would have received in a Chapter 7 liquidation.  It also had to refute Access's affirmative defense that the payment was not a preference because it was made in the ordinary course of business.

182.    To meet this burden, Brown Rudnick engaged Anders J. Maxwell ("Maxwell"), an accomplished expert and Managing Director at PJ Solomon in the Debt Advisory & Restructuring

Practice, to prepare a report to support the insolvency element of the Preference Claim.  In 2011, in connection with his engagement, Maxwell issued a report in which he applied the balance sheet test and opined that LBI had been insolvent on October 20, 2008, when the Access Revolver was fully repaid.  Because LBI's 2008 projections varied materially and not all of them reflected the economic downturn, Maxwell relied on those prepared closest in time to mid-October 2008.

183.    With expert discovery complete in early 2011, the Trust and Access each sought summary judgment on the Preference Claim.  More than five years later, Judge Glenn denied both motions in August 2016, finding triable issues of fact with respect to insolvency, as well as Access's "ordinary course of business" affirmative defense.

184.    Prior to and during trial, the parties explored settlement of the Preference Claim.  During pre-trial mediation, the mediator indicated that a significant settlement was achievable (equal to 50% of the potential net recovery), and Brown Rudnick, as instructed by Mr. Weisfelner as Trustee, advised the TAB that the Trust likely would be able to settle the Preference Claim within a range indicated by the mediator.

185.    Despite this opportunity, the TAB refused, preferring to "roll the dice" on a potentially larger – but uncertain – recovery.

186.    Following trial, Judge Glenn concluded that the Trust had not established insolvency of LBI in December 2007, or of LBI or Lyondell in October 2008, and therefore ruled against the Trust on the Preference Claim.

**B.    The Trust's Frivolous Demand**

187.    Pursuant to the Trust Agreement and its engagement letter, Brown Rudnick's pursuit of claims on behalf of the Trust obtained approximately $150 million in value for the unsecured creditors.  As of March 29, 2019, the Trust retained a cash balance of $1,965,851, with

$1,092,666 expected to be reserved for "Wind-Down Costs and Reserve." *See* Ex. C, March 2019 Trust Disclosure.

188.    At all relevant times, Brown Rudnick's strategic choices related to its pursuit of claims on behalf of the Trust were subject to the direction of Mr. Weisfelner as Trustee in consultation with the TAB. *See* Ex. A, at § 4.3(a). Several members of the TAB are advised by bankruptcy lawyers paid for by the Trust, or are themselves bankruptcy lawyers, including Counterclaim Defendant Silverstein. *See* Ex. A, at § 4.3(a).

189.    Following trial in 2017 on the Trust's last remaining claims, and an unsuccessful appeal of unfavorable rulings to the District Court, certain of the same beneficiaries of the Trust that had urged Brown Rudnick to not settle the Preference Claim in a realistic range before trial and who had worked to block or impede Brown Rudnick's ability to settle the Preference Claim for a significant sum prior to trial, upon information and belief in an effort to recoup certain trading losses and/or enhance profits, offered to purchase claims from the Trust, including claims that Brown Rudnick committed alleged legal malpractice in connection with its pursuit of claims on behalf of the Trust. *See* Ex. D, Letter from Caspian Capital LP dated July 31, 2018 (the "Caspian Letter").

190.    The Caspian Letter implicitly threatened that it would pursue breach of fiduciary duty claims against the TAB members should they refuse either to replace Mr. Weisfelner with a successor trustee or to empower a separate special litigation trustee to pursue claims against Brown Rudnick. *Id.*

191.    Although multiple members of the TAB expressed privately to Brown Rudnick partners that they believed the threatened claims against Brown Rudnick had no merit, and reported back to Brown Rudnick that the TAB, through one or more TAB members, had expressly told

Caspian directly that the claims had no merit, they nevertheless decided to pursue those claims for their personal benefit, in order to keep Caspian (which itself had interfered with Brown Rudnick's ability to settle the Preference Claim prior to trial) from asserting fiduciary duty claims against them personally.

192.    Following receipt of the Caspian Letter, the TAB removed Mr. Weisfelner as Trustee on the purported grounds that, as a Brown Rudnick partner, Mr. Weisfelner was not in a position to evaluate or pursue the Trust's malpractice claims against Brown Rudnick.  *See* Case No. 09-10023-mg, Dkt. No. 7566.

193.    At no point prior to Mr. Weisfelner's removal did the TAB speak to anyone at Brown Rudnick regarding the facts or circumstances surrounding its representation of the Trust, or investigate the bases underlying Brown Rudnick's strategic decisions in its pursuit of claims on behalf of the Trust.

194.    Brown Rudnick explained to counsel for the Trust as early as April 2019 that Brown Rudnick is an Indemnified Person under the Trust Agreement, entitled to advancement of its defense expenses, and that the Trust did not have adequate funds to pursue its claims.  Rather than prepare for dissolution of the Trust as foreseen in the bankruptcy plan, and distribution of the remaining assets to the Trust's beneficiaries, new counsel for the Trust instead attempted repeatedly to shake down Brown Rudnick and its insurers by threatening baseless claims for malpractice.

### C.    Brown Rudnick is Entitled to Advancement of Fees and Costs

195.    In response to the Trust's threatened and filed malpractice claims, Brown Rudnick has incurred substantial legal fees in excess of $750,000.

196.    Brown Rudnick is an intended third-party beneficiary of the Trust Agreement. Section 7.2(a) of the Trust Agreement states clearly that "Indemnified Persons" include the

Trustee's "agents," "professionals," and "partners." *See* <u>Ex. A</u> at § 7.2(a).  The Trustee, Mr. Weisfelner, engaged Brown Rudnick as his (and by extension the Trust's) professionals and agents to pursue claims; Mr. Weisfelner was and remains a partner of Brown Rudnick.  As an Indemnified Person, Brown Rudnick is entitled to the advancement of its legal fees and costs under Section 7.2(b) of the Trust Agreement.  Brown Rudnick's right to advancement of legal fees and costs is indisputable.   Section 7.2(b) of the Trust Agreement requires advancement of Indemnified Persons' "reasonable expenses of defending themselves in any action brought against them as a result of the acts and omissions, actual or alleged, of an Indemnified Person in its capacity as such." *See id.* at § 7.2(b).

197.    Brown Rudnick tendered its invoices to counsel for the Trust detailing the legal fees and costs it had incurred as a result of the threatened claims based on Brown Rudnick's alleged acts and omissions as counsel for the Trust.  Brown Rudnick explained that it is entitled to advancement of defense costs as an Indemnified Person under the Trust Agreement.  Counsel for the Trust responded derisively and almost immediately, rejecting the request.

198.    Notwithstanding counsel's flippant response, there can be no serious question as to Brown Rudnick's status as an "Indemnified Person" under Trust Agreement.  Section 7.2(a) states clearly that such persons include the Trustee's "agents," "professionals," and "partners."  As such, Brown Rudnick, as counsel to the Trustee from April 2010 until May 2019, is clearly an "Indemnified Person" in connection with its work on behalf of the Trust.  And as an intended third-party beneficiary of the Trust Agreement, Brown Rudnick is entitled to enforce its right to advancement of defense fees and costs as against the Trust.

## DEFENSES AND AFFIRMATIVE DEFENSES

199.    Brown Rudnick further asserts the following defenses and affirmative defenses to each cause of action alleged by Plaintiff, the applicability of which will be determined through the

course of discovery.  By alleging the defenses set below, Brown Rudnick does not hereby agree

or admit that it has the burden of proof, persuasion, or production with respect to any elements of

any defense, or that Plaintiff has properly asserted any cause of action against Brown Rudnick.

(1)     Plaintiff's claims for relief are barred in whole or in part by the doctrines of ratification, waiver, acquiescence, laches or estoppel;

(2)     The Trust, at the direction of the TAB members, expressly and impliedly consented to and ratified all acts, occurrences and omissions as alleged in the Complaint;

(3)     The Trust assumed the risk of proceeding to trial on the Preference Claim;

(4)     The Trust's claims for relief are barred in whole or in part by its comparative and/or contributory negligence, including but not limited to the negligence of the TAB members;

(5)     The Trust's claims fail because the underlying issues of law were unsettled, were of first impression, or were otherwise debateable;

(6)     Plaintiff's claims for relief are barred in whole or in part by the doctrine of unclean hands and other equitable defenses;

(7)     Plaintiff's claimed damages were not proximately caused by Brown Rudnick;

(8)     Plaintiff's claims are barred by the Trust's failure, at the direction of the TAB members, to mitigate the alleged damages;

200.    In addition to the enumerated defenses above, Brown Rudnick reserves the right to

assert additional defenses that may become available or appropriate in the course of discovery by

further investigation or at trial.  Brown Rudnick specifically reserves the right to amend its Answer

and Affirmative Defenses for the purpose of asserting any such additional defenses.

## **FIRST COUNTERCLAIM**

### **(Advancement of Fees and Costs)**

201.    Brown Rudnick repeats and re-alleges the allegations above as if fully set forth

herein.

202. The Trust executed the Trust Agreement dated as of April 30, 2010.

203. The Trust Agreement requires the Trust to advance funds to cover Brown Rudnick's reasonable expenses of defending itself against any actions brought against it as a result of the acts and omissions undertaken in its capacity as an Indemnified Person.

204. The Trust has refused to advance Brown Rudnick's reasonable costs incurred as a result of the Trust's pursuit of its alleged legal malpractice claim against Brown Rudnick based on Brown Rudnick's prosecution of the Preference Claim.

205. Brown Rudnick is plainly an Indemnified Person under the Trust Agreement by virtue of its service as counsel to the Trust.

206. By reason of the foregoing, Brown Rudnick is entitled to advancement of all fees and costs it has incurred and continues to incur as a result of the Trust's pursuit of its alleged legal malpractice claim.

## SECOND COUNTERCLAIM

### (Personal Liability)

207. Brown Rudnick repeats and re-alleges the allegations above as if fully set forth herein.

208. Pursuant to the Trust Agreement, the TAB members' limitation of liability does not apply to any actions or omissions arising out of their gross negligence or willful misconduct.

209. The TAB members, including Counterclaim Defendant Silverstein, committed gross negligence by directing the assertion of claims against Brown Rudnick that they themselves had approved and ratified, while by their own admission failing to inform themselves fully and in a deliberate manner with respect to facts and circumstances surrounding Brown Rudnick's strategic decisions in its pursuit of claims on behalf of the Trust. Indeed, the Replacement Trustee

and TAB members failed to so much as speak with anyone at Brown Rudnick regarding its representation of the Trust before asserting such claims.

210.    In asserting claims against Brown Rudnick, despite not having adequate funds to pursue its claims and advance Brown Rudnick's defense costs, the TAB members demonstrated reckless indifference to their beneficiaries, creditors, contractual obligations under the Trust Agreement, and settled New York law that counsel cannot be held liable for its reasonable strategic litigation decisions.

211.    The TAB members' decision to accuse Brown Rudnick of legal malpractice was not done for any legitimate business purpose, but rather to protect themselves from potential breach of fiduciary duty claims threatened by the Trust's litigious beneficiaries.  Moreover, these acts were performed in conscious disregard of the TAB members' direct involvement in all strategic litigation decisions, approval of such decisions, participation in all settlement-related decisions, as well as the Trust's duty to advance Brown Rudnick's defense costs thereby depleting whatever negligible funds remained in the Trust.

212.    The TAB approved of this strategy in violation of their fiduciary duties to the Trust. Indeed, upon information and belief, they have continued to draw significant salaries from the Trust, as they have done since their appointment to the TAB, and have the Trust pay for their separate legal counsels.

213.    The Court dismissed two of the Replacement Trustee's three claims against Brown Rudnick for failure to state a claim because the Replacement Trustee had failed to plead elements of those claims – in one instance failing to allege the existence of an attorney-client relationship and in the other failing to allege any damages whatsoever.  *See* Dkt. 33 at 25-29.  Although these

claims were frivolous and poorly pled, Brown Rudnick was nevertheless forced to incur substantial fees and costs in seeking their dismissal.

214.    By reason of the foregoing, the TAB members, including Counterclaim Defendant Silverstein, have committed gross negligence and willful misconduct in pursuing their meritless claims, and are therefore personally liable for Brown Rudnick's legal fees and costs.

WHEREFORE, Brown Rudnick respectfully requests that:

215.    Holliday as the Replacement Trustee be ordered to advance the attorneys' fees and other costs Brown Rudnick has incurred and tendered to the Trust;

216.    Holliday as the Replacement Trustee be ordered to advance any and all other reasonable costs that Brown Rudnick has incurred, or will incur, in connection with its defense of any claims related to its representation of the Trust, including claims threatened by the Trust;

217.    Holliday as the Replacement Trustee be enjoined from diminishing the Trust's funds – including by making payments to the Replacement Trustee, TAB members, and their respective counsel – until the claims threatened against Brown Rudnick, as well as Brown Rudnick's rights to advancement and indemnification, have been resolved;

218.    That, to the extent the Trust does not have sufficient funds to advance Brown Rudnick's fees and costs, Counterclaim Defendant Silverstein individually be ordered to advance such fees and costs;

219.    Brown Rudnick be awarded such further relief as to which it may be entitled and as may be warranted by fact, law, and equity.

Dated: August 18, 2020

New York, New York.          Respectfully submitted,

/s/  Christopher J. Clark
Christopher J. Clark
Nicholas Lloyd McQuaid
Virginia F. Tent
Rakim E. Johnson
Sindhu Boddu
chris.clark@lw.com
nicholas.mcquaid@lw.com
virginia.tent@lw.com
rakim.johnson@lw.com
sindhu.boddu@lw.com
Latham & Watkins LLP
885 Third Avenue
New York, NY 10022
Phone: (212) 906-1200

*Attorneys for Brown Rudnick LLP*